UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the Estate of Danny
Whitney, Deceased,

    Plaintiff,

v.

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY,
DEPUTY SCOTT MARTIN, SERGEANT
ED LASSA, CORRECTIONAL
HEALTHCARE COMPANIES, INC.,
HEALTH PROFESSIONALS, LTD, P.C.,
STEPHANIE L. MILLER, LPN, and
WILFRED P. SALDANHA, MD, Jointly and
Severally,

    Defendants.

Case No. 14-
Hon.

**VEN R. JOHNSON (P39219)**
**JULIANA B. SABATINI (P64367)**
JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold, Suite 2632
Detroit, Michigan 48226 (313)
324-8300
vjohnson@venjohnsonlaw.com
jsabatini@venjohnsonlaw.com

## COMPLAINT and DEMAND FOR JURY TRIAL

There is no other pending civil action arising out
of the transaction or occurrence alleged in this Complaint.

    /s/Juliana B. Sabatini
**JULIANA B. SABATINI (P64367)**

NOW COMES Plaintiff, BRENDA STRAIT, as Personal Representative of the Estate of

DANNY WHITNEY, Deceased, by and through her attorneys, JOHNSON LAW, PLC and for

her Complaint against the above-named defendants, states as follows:

1

1.      At all times relevant to this lawsuit, Plaintiff, BRENDA STRAIT ("Brenda"), was the mother of Plaintiff's decedent, DANNY WHITNEY ("Danny"), and was the duly appointed Personal Representative of Danny's estate, residing in the City of Traverse City, County of Grand Traverse, State of Michigan.

2.      At all times relevant to this lawsuit, defendant, COUNTY OF GRAND TRAVERSE ("County"), is a political subdivision of the State of Michigan duly organized and carrying out governmental functions pursuant to the laws of Michigan, and one of the functions is to organize, operate, staff and supervise its detention center commonly known as Grand Traverse County Correctional Facility.

3.      At all times relevant to this lawsuit, defendant, SHERIFF THOMAS BENSLEY ("Bensley"), was the Sheriff of Grand Traverse County Correctional Facility and the policy maker for the Grand Traverse County Correctional Facility and represented the ultimate repository of law enforcement power in the Grand Traverse facility.  Bensley was acting within the scope of his employment and under color of state law in his official capacity and is being sued in his official capacity as policymaker and Sheriff, as well as in his individual capacity.

4.       Furthermore, Bensley had the charge and custody of the Grand Traverse County Correctional Facility and formulated and oversaw policies, practices, regulations, protocols, and customs therein and had the authority for hiring, screening, training, supervising, and disciplining of deputies, corrections officers and medical staff.

5.      At all times relevant to this lawsuit defendant SERGEANT ED LASSA ("Lassa") was a deputy officer employed by County and who was acting under the color and pretense of ordinances, regulations, laws and customs of County and is being sued herein in his individual capacity.

6.      At all times relevant to this lawsuit defendant DEPUTY SCOTT MARTIN ("Martin") was a deputy officer employed by County and who was acting under the color and pretense of ordinances, regulations, laws and customs of County and is being sued herein in his individual capacity.

7.      At all times relevant to this lawsuit, defendant CORRECTIONAL HEALTHCARE COMPANIES, INC. ("CHC") is a for-profit corporation licensed to do business in Michigan, with its principal place of business located in the state of Delaware. At all times pertinent hereto, CHC provided medical services to the County's jail, under the color and pretenses of ordinances, regulations, laws and customs of County and/or laws of the State of Michigan.

8.      At all times relevant to this lawsuit, defendant HEALTH PROFESSIONALS, LTD, P.C., ("HPL") is a for-profit corporation licensed to do business in Michigan, with its principal place of business located in the state of Michigan. At all times pertinent hereto, HPL provided medical services to the County's jail, under the color and pretenses of ordinances, regulations, laws and customs of County and/or laws of the State of Michigan.

9.      At all times relevant to this lawsuit, defendant STEPHANIE L. MILLER, LPN ("Miller"), licensed practical nurse, was an agent and/or employee of CHC and/or HPL and provided licensed practical nursing and/or medical services at th Grand Traverse County Correctional Facility including, but not limited to, inmates such as Danny Whitney, and is being sued herein in her individual capacity.

10.     At all times relevant to this lawsuit, defendant WILFRED SALDANHA, M.D. ("Saldanha"), was an agent and/or employee of CHC and/or HPL and provided medical services at the Grand Traverse County Correctional Facility including, but not limited to, inmates such as Danny Whitney, and is being sued herein in his individual capacity.

11. At all times relevant to this lawsuit, the individually named defendants were at all times employees of Grand Traverse, CHC and/or HPL, acting within the scope of their employment.

12. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the statutes and common law of the State of Michigan.

13. This cause of action arose in the City of Traverse City, County of Grand Traverse, State of Michigan.

14. This Court has jurisdiction over this cause of action under the provisions of Title 28 of the United States Code, sections 1331 and 1342 and pendant jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

15. All of the acts and/or omissions of the defendants set forth herein were done under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the County of Grand Traverse and/or State of Michigan, and by virtue of and under the authority of the defendants' employment and/or agency relationship with Grand Traverse County.

16. County is responsible for, and does in fact, hire, train, supervise and instruct corrections officers, detention officers and nurses, licensed practical nurses, and medical personnel of all grades in the performance of their duties.

17. The amount in controversy exceeds $75,000.00, exclusive of Plaintiff's claims for costs, attorney fees, interest and punitive damages.

18. On or about 3:50 p.m. on March 2, 2011, Danny tested positive for drugs in district court probation by probation officer Margaret Drury.

4

19. Lassa presented to the district court probation to arrest Danny. Lassa noted Danny to be groggy.

20. Danny was questioned by Lassa regarding his drug use and Danny indicated he had taken four methadone pills and one Xanax pill.

21. Lassa and Drury contacted the house where Danny was staying to check his prescription bottles. A discrepancy was reported to Lassa in when the prescription was filled and how many pills were in the bottles. There was no determination made as to the amount of methadone ingested by Danny.

22. Danny was brought to the Grand Traverse County Correctional Facility ("GTCF") by Lassa.

23. Lassa decided to conduct a body cavity search of Danny due to the discrepancy of his medications and being under the influence of drugs. Nothing was found.

24. Danny was placed on a bench in the booking area to await booking and during this time was noted to be groggy.

25. At approximately 5:35 p.m., Martin took Danny's vitals which were noted as blood pressure of 94/54, oxygen saturation of 83%, pulse of 67.

26. At approximately 5:38 p.m., a Jail Medical/Mental Questionnaire was completed by Martin which affirmatively confirmed that Danny uses methadone, and further confirmed that Danny abuses drugs and alcohol.

27. The Jail Medical/Mental Questionnaire also documented Danny's medical history of high blood pressure.

28. At approximately 5:45 p.m., Martin entered the medical office and stated to Stephanie Miller, LPN ("Miller") that Danny appeared to be under the influence of something and reported Danny's pulse ox as 83%.

5

29. At approximately 5:54 p.m., Miller took Danny's vitals and gave him a glass of water. Miller noted that Danny appeared drowsy and his speech was slurred. Danny's vitals were noted as blood pressure of 90/58, pulse ox of 96%, heart rate of 73.

30. At approximately 6:00 p.m., Danny's blood pressure was noted as 87/60.

31. Miller then advised Martin to place Danny in a cell in the intake area for observation. Danny was placed in observation cell 104. Danny was noted to be snoring very loudly.

32. That after being placed in an observation cell, no deputy or medical provider ever re-evaluated Danny's vital signs.

33. At approximately 8:45 p.m., Miller informed Martin that Saldanha had been consulted regarding Danny's condition and advised to let him continue to sleep.

34. At approximately 8:54 p.m., Danny was noted to be passed out with his left arm falling over his face. Soon thereafter, Danny was noted to be twitching and seizing.

35. Throughout that time despite knowing Danny's history, drug intake, and current signs and symptoms, neither County's correctional officers, nor CHC and/or HPL's medical personnel had Danny examined by an nurse, doctor, or transported him to a hospital.

36. Defendants' were aware that Danny was exhibiting signs and symptoms of methadone overconsumption, including dizziness, fatigue, drowsiness, pinpoint pupils, confusion, cold and clammy, snoring.

37. For the rest of the day, the County's correctional officers and/or medical providers failed to timely perform their rounds and/or observation of Danny as is required of them by County's own policies and procedures.

38. Despite placing Danny in an observation, Danny was left with a blanket covering his head the entire time during incarceration. At no time, did any correctional officer and/or

6

medical provider enter into the observation cell and closely observe Danny under the blanket.

39. At approximately 11:00 p.m., corrections officers found Danny to be unresponsive with foamy froth from his mouth, vomit in the area, cape cyanosis, and arm discoloration. Danny was pronounced dead.

40. The autopsy report concluded Danny's death was a result of acute methadone toxicity.

41. Further, Danny was no stranger to the employees and staff at the GTCF having been detained in said facility eleven times through the date of his death. The defendants and staff of GTCF knew Danny was at high risk for methadone overdose, toxicity, and death.

42. At all times during his incarceration at the GTCF, Danny was never provided appropriate medical assistance or transferred to a hospital.

43. Defendants, staff members and agents were fully aware of Danny's delicate state and his deteriorating condition.

44. While Danny was in the cell, Danny behaved in such a fashion that was highly evident that he was rapidly deteriorating and needed prompt and immediate medical treatment.

45. Despite knowledge of Danny's visible medical condition and deterioration of his condition, the County did not initiate any close observation of Danny or take proper precautions to protect Danny, nor did they take steps to properly and adequately monitor Danny.

46. Defendants, and/or their employees and agents ignored Danny's symptoms and left him in the holding cell without further monitoring and/or assistance.

### COUNT I
### DENIAL OF MEDICAL TREATMENT- FOR SERIOUS MEDICAL NEEDS- ALL DEFENDANTS

47. Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 45 as though fully set forth herein.

7

48. At all times mentioned herein, while defendants were acting under color of statute, ordinances, regulations and/or customs of the State of Michigan, County of Grand Traverse, City of Traverse City, defendants subjected Danny to a deprivation of his rights, privileges and immunities secured by the Constitutions and laws of the United States and the State of Michigan.

49. Pursuant to 42 U.S.C. §1983, as well as the Eight and Fourteenth Amendments to the United States Constitution, defendant County of Grand Traverse and the individually named corrections officers and medical staff owed Danny duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

50. Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 USC §1983, as well as under the Michigan Constitution, a prisoner like Danny has the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

51. Defendants owed a duty to the general public, but to Danny in particular, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to prisoners, as well as to train, test, evaluate, review, and update its officers' and medical personnel's' abilities to function in a reasonable manner and in conformance with the laws of the United States in the State of Michigan relative to providing prisoners with the necessary medical attention.

52. Each and every one of the defendants violated Danny's civil rights when they displayed deliberate indifference to Danny's serious medical condition in the following ways, including but not limited to:

   a. Failure to properly train jail personnel in the evaluation of whether a detainee needs medical treatment;

   b. Failure to provide Danny with immediate medical attention when the defendants each became subjectively aware of Danny's objectively serious medical need;

8

    c. Failure to transfer Danny to a hospital;

    d. Failure to assure that County, CHC and/or HPL personnel at the jail examined and treated Danny after he had been exhibiting objective signs of methadone overdose and/or methadone toxicity;

    e. Failure to procure medical treatment for Danny by either the County, CHC and/or HPL personnel at the jail or have him transferred to a healthcare facility/hospital;

    f. Failure to train its officers on how to obtain medical attention for detainee's who show obvious signs of methadone overdose and/or toxicity;

    g. Failure to do rounds on detainees as required by County policy;

    h. Failure to staff jail with nurses, licensed practical nurses, or doctors who were competent and licensed to perform physical examinations and promptly diagnose an emergent medical condition such as methadone overdose and/or methadone toxicity; and

    i. Any other breaches which become known during the course of discovery.

53. As a direct and proximate result of the above cited violations of Danny's civil rights by defendants, Danny died and thus his estate, through Brenda, has and will continue to suffer damages in the future, including, but not limited to:

    a. Reasonable medical, hospital, funeral and burial expenses;

    b. Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first medical symptoms and his death;

    c. Loss of financial support;

    d. Loss of service;

    e. Loss of gifts or other valuable gratitude's;

    f. Loss of parental training and guidance;

    g. Loss of expected inheritance;

    h. Loss of society and companionship; and

    i. Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA* § 600.2922.

**WHEREFORE**, Plaintiff, Brenda, respectfully requests this Honorable Court enter Judgment in her favor and against defendants in excess of $75,000, including punitive damages under 42 U.S.C. § 42, plus costs, interest, attorney fees, as well as an award of punitive damages.

## COUNT II
## FAILURE TO TRAIN, INADEQUATE POLICIES AND/OR PROCEDURES, CUSTOMS AND PRACTICES AND FAILURE TO SUPERVISE- DELIBERATE INDIFFERENCE- COUNTY, BENSLEY, CHC and HPL

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 as though fully set forth herein.

55. Pursuant to 42 USC §1983, as well as the 4th and 14th Amendments to the United States Constitution, County, Bensley, CHC and/or HPL owed Danny certain duties to properly supervise, monitor and train its correctional officers and medical staff so as to monitor and supervise the jail's prisoners so that they would detect serious medical conditions and facilitate prompt and immediate medical attention and/or transport to a hospital.

56. County, Bensley, CHC and/or HPL breached these duties via their policies, procedures, regulations, customs and/or lack of training and thus exhibited a deliberate indifference toward its prisoners, and Danny specifically, in the following ways, including but not limited to:

    a. County, CHC and/or HPL's failure to staff the jail with competent medical personnel;

    b. County, CHC and/or HPL's failure to monitor their correctional officers and medical personnel to ensure that they adequately monitor and supervise inmates who have serious medical needs;

    c. County, CHC and/or HPL's failure to have proper policies and procedures, and training to deal with inmates in the observation cell and ensure that the polices and/or procedures are followed, which include serial examinations by competent and licensed medical personnel like RNs and/or doctors;

    d.    Failure to ensure the correctional officers conduct timely and adequate rounds and record their observations of the prisoners as required by their own policies and/or procedures;

    e.    County, CHC and/or HPL's failure to fully investigate and discipline its correctional officers and/or medical personnel who do not abide by its policies and procedures relative to providing medical care for serious conditions; and

    f.    All other breaches learned through the course of discovery.

57. As a direct and proximate result of County, Bensley, CHC and/or HPL's deliberate indifference to Danny via its inadequate training, policy, procedures and/or customs, Danny died and his estate via, Brenda, has and will continue to suffer damages into the future, including, but not limited to:

    a.    Reasonable medical, hospital, funeral and burial expenses;

    b.    Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first symptoms and his death;

    c.    Loss of financial support;

    d.    Loss of services;

    e.    Loss of gifts or other valuable gratuities;

    f.    Loss of society and companionship; and

    g.    Any and all other damages as identified through the course of discovery as otherwise available under the Michigan Wrongful Death Act; *MCLA §600.2922*.

WHEREFORE, Plaintiff, Brenda, respectfully requests this Honorable Court enter Judgment in her favor and against defendants in excess of $75,000, plus costs, interest, attorney fees, as well as an award of punitive damages.

## COUNT III
## GROSS NEGLIGENCE, INTENTIONAL, WILLFUL AND WANTON CONDUCT- ALL DEFENDANTS

58. Plaintiff repeats, realleges and incorporates by reference each and every allegation

11

contained in paragraphs 1-57 though fully set forth herein.

59. At all relevant times, the individually named corrections officers and medical staff were acting within the course and scope of their employment with County, CHC, and/or HPL as law enforcement officers and medical providers.

60. That defendants County, CHC, and/or HPL and the individually named defendants owed Danny the duty to provide medical care for his obviously serious medical needs.

61. That defendants County, CHC, and/or HPL and the individually named defendants, acting within the scope of their employment, breached this duty and were grossly negligent as that term is defined in MCL 691.1407(2)(c), when they acted intentionally by the actions described above, said acts having been committed intentionally or so recklessly as to demonstrate a substantial lack of concern as to whether injury would result and/or their acts of willful and wanton misconduct toward Danny and in disregard for his health, safety and constitutional/statutory rights.

62. At all relevant times, defendant County, CHC, and/or HPL and the individually named defendants were grossly negligent in one or more of the following ways:

   a. Failure to properly train jail personnel in the evaluation of whether a detainee needs medical treatment;

   b. Failure to provide Danny with immediate medical attention;

   c. Failure to transfer Danny to a hospital;

   d. Failure to assure that County, CHC and/or HPL personnel at the jail examined and treated Danny after he had been exhibiting objective signs of methadone overdose and/or methadone toxicity;

   e. Failure to procure medical treatment for Danny by either the County, CHC and/or HPL personnel at the jail or have him transferred to a hospital;

   f. Failure to train its officers on how to obtain medical attention for detainee's who show obvious signs of methadone overdose and/or toxicity;

   g. Failure to do rounds on detainees as required by County policy;

   h. Failure to staff jail with nurses, licensed practical nurses, or doctors who

were competent and licensed to perform physical examinations and promptly diagnose an emergent medical condition such as methadone overdose and/or methadone toxicity; and

j. Any other breaches which become known during the course of discovery.

63. As the direct and proximate result of the above cited violations of Danny's civil rights by defendants, Danny died and thus his estate, through Brenda, has and will continue to suffer damages in the future, including, but not limited to:

a. Reasonable medical, hospital, funeral and burial expenses;

b. Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first medical symptoms and his death;

c. Loss of financial support;

d. Loss of service;

e. Loss of gifts or other valuable gratitude's;

f. Loss of parental training and guidance;

g. Loss of expected inheritance;

h. Loss of society and companionship; and

i. Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA* § 600.2922.

**WHEREFORE,** Brenda respectfully requests that this Honorable Court enter judgment in her favor and against defendants, including punitive damages under 42 U.S.C. § 42, in excess of $75,000.00 together with interest, costs and attorney's fees.

## COUNT IV
## MEDICAL MALPRACTICE – CHC, HPL, MILLER

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 as though fully set forth herein.

65. At all times relevant to this lawsuit, jail medical personnel, Miller, was CHC and/or

13

HPL's employee and/or actual agent and/or apparent/ostensible agent of CHC and/or HPL and acting in the course and scope of her employment with CHC and/or HPL, and thus CHC and/or HPL is vicariously liable for Miller's acts of medical malpractice pursuant to the doctrine of Respondeat Superior.

66. CHC and/or HPL via Miller undertook and had a duty to provide Danny with competent medical care and treatment which would at all times be in accordance with acceptable medical practice in the community.

67. CHC and/or HPL, as well as their actual and/or implied agents, servants, employees, including physicians and licensed practical nurses such as Miller, breached the above duties and obligations owed to Danny, by acting in variance with acceptable standards of medical practice in the community and are thus professionally negligent and grossly negligent, in the following ways, including but not limited to:

    a. failing to timely and appropriately communicate with and among the medical and nursing staff regarding Danny's condition and complaints;

    b. failing to perform an accurate and complete medical and risk assessment of Danny;

    c. failing to timely and appropriately examine and treat Danny;

    d. failing to timely and appropriately communicate with the physician and/or supervisory personnel regarding an inmate's medical complaint;

    e. failing to timely obtain medical attention for Danny when obvious risk facts for medical complications were present;

    f. failing to timely and appropriately transfer to a hospital;

    g. failing to carry out or refer Danny for treatment including attention to and management of Danny's airway to ensure Danny could breathe;

    h. failing to timely obtain appropriate medical care in a timely fashion, such as transfer to a hospital;

    i. failing to request and ensure transfer to a hospital for a complete physical work up, to include medical testing, laboratory studies, and any additional

14

      testing that may be necessary;

j. failing to monitor an inmate in a timely fashion, while that inmate is under observation;

k. failing to ensure that all appropriate protocols, including obtaining vital signs are followed;

l. failing to ensure that policies and procedures of a jail infirmary are followed;

m. failing to ensure that proper assessment of Danny is made and recognize a medical emergency, including but not limited to methadone overdose; and,

n. failing to timely initiate and pursue chain of command; and

o. Any and all other breaches of the standard of care found to be violated through the course of discovery.

68. As a direct and proximate result of CHC, HPL, and Miller's negligence, grossly negligent acts and/or omissions, Danny died, and thus his estate via Brenda has and continues to incur damages, including but not limited to;

    a. Reasonable medical, hospital, funeral and burial expenses;

    b. Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first symptoms and his death;

    c. Loss of financial support;

    d. Loss of services;

    e. Loss of gifts or other valuable gratuities;

    f. Loss of society and companionship; and

    g. Any and all other damages as identified through the course of discovery as otherwise available under the Michigan Wrongful Death Act; *MCLA §600.2922*.

WHEREFORE, Plaintiff, Brenda, respectfully requests this Honorable Court enter Judgment in her favor and against defendants CHC, HPL and Miller in excess of $75,000, plus costs, interest, and attorney fees.

15

## COUNT V
## MEDICAL MALPRACTICE – CHC, HPL, SALDANHA

69. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 as though fully set forth herein.

70. At all times relevant to this lawsuit, Saldanha was a CHC and/or HPL employee and/or actual agent and/or apparent/ostensible agent of CHC and/or HPL and acting in the course and scope of his employment with CHC and/or HPL, and thus, CHC and/or HPL is vicariously liable for jail medical personnel's acts of medical malpractice pursuant to the doctrine of Respondent Supervisor.

71. CHC, HPL and Saldanha undertook and had a duty to provide Danny with competent and appropriate medical care and treatment which would at all times be in accordance with acceptable medical practice in the community.

72. CHC, HPL and Saldanha as well as their actual and/or implied agents, servant, employees, including physicians, breached the above duties and obligations owed to Danny by acting in variance with acceptable standards of medical practice in the community and are thus professionally negligent and grossly negligent in the following ways, including but not limited to:

    a. Failing to timely and appropriately come to the prison to examine and treat Danny;

    b. Failing to timely and appropriately communicate with the medical and nursing staff regarding Danny's medical complaints;

    c. Failing to timely obtain medical attention for Danny when obvious risk facts for medical complications were present;

    d. Failing to timely and appropriately transfer to a hospital;

    e. Failing to timely obtain appropriate medical care in a timely fashion, such as transfer to a hospital;

    f. Failing to carry out or refer Danny for treatment including attention to and management of Danny's airway to ensure Danny could breathe;

    g. Failing to request and ensure transfer to a hospital for a complete physical work up, to include medical testing, laboratory studies, and any additional

16

       testing that may be necessary;

h. Failing to monitor an inmate in a timely fashion, while that inmate is under observation;

i. Failing to ensure that nursing staff is following all appropriate protocols, including obtaining vital signs;

j. Failing to ensure that policies and procedures of a jail infirmary are followed;

k. Failing to ensure that proper assessment of Danny is made and recognize a medical emergency, including but not limited to methadone overdose; and

l. Any and all other breaches of the standard of care found to be violated through the course of discovery.

73. As a direct and proximate result of CHC, HPL and Saldanha's negligence and grossly negligent acts and/or omissions, Danny died, and thus his estate via Brenda has and continues to incur damages, including but not limited to;

a. Reasonable medical, hospital, funeral and burial expenses;

b. Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first symptoms and his death;

c. Loss of financial support;

d. Loss of services;

e. Loss of gifts or other valuable gratuities;

f. Loss of society and companionship; and

g. Any and all other damages as identified through the course of discovery as otherwise available under the Michigan Wrongful Death Act; *MCLA §600.2922.*

WHEREFORE, Plaintiff, Brenda, respectfully requests this Honorable Court enter Judgment in her favor and against defendants CHC, HPL and Saldanha, in excess of $75,000, plus costs, interest and attorney fees.

Respectfully submitted,

**JOHNSON LAW, PLC**

By: \_\_\_/s/ Juliana B. Sabatini
**VEN R. JOHNSON (P39219)**
**JULIANA B. SABATINI (P64367)**
Attorneys for Plaintiff
Buhl Building
535 Griswold Street, Suite 2632
Detroit, MI 48226
313.324.8300
vjohnson@venjohnsonlaw.com
jsabatini@venjohnsonlaw.com

Dated: June 11, 2014