UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the ESTATE OF DANNY
WHITNEY, Deceased,

        Plaintiff,

v

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY, DEPUTY
SCOTT MARTIN, SERGEANT ED
LASSA, CORRECTIONAL
HEALTHCARE COMPANIES, INC.,
HEALTH PROFESSIONALS, LTD, P.C.
STEPHANIE L. MILLER, LPN and
WILFRED P. SALDANHA, M.D., Jointly
and Severally,

        Defendants.

HON. PAUL L. MALONEY
U.S. DISTRICT COURT JUDGE

FILE NO. 1:14-cv-00630-PLM

**DEFENDANTS COUNTY OF GRAND
TRAVERSE, SHERIFF THOMAS
BENSLEY, DEPUTY SCOTT MARTIN,
AND SERGEANT ED LASSA'S
ANSWER TO PLAINTIFF'S
COMPLAINT**

_____/

Ven R. Johnson (P39219)
Juliana B. Sabantini (P64367)
JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold, Ste. 2632
Detroit, MI 48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
jsabatini@venjohnsonlaw.com

Randall A. Juip (P58538)
Brian J. Richtarcik (P49390)
FOLEY, BARON, METZGER & JULIP, PLLC
Attorneys for Defs. CORRECTIONAL
HEALTHCARE COMPANIES, HEALTH
PROFESSIONALS, LTD., P.C., MILLER
and SALDANHA
38777 Six Mile Road, Ste. 300
Livonia, MI 48152
(734) 742-1800/(734) 521-2379 Fax
rajuip@fbmilaw.com
brichtarcik@fbmjlaw.com

T. Joseph Seward (P35095)
Haider A. Kazim (P66146)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defs. COUNTY OF GRAND
TRAVERSE, SHERIFF BENSLEY,
DEPUTY MARTIN and SGT. LASSA
400 W. Front Street, Ste. 200
Traverse City, MI 49684
(231) 922-1888
hkazim@cmda-law.com

_____/

## DEFENDANTS COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN, AND SERGEANT ED LASSA'S ANSWER TO PLAINTIFF'S COMPLAINT

NOW COME Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN, and SERGEANT ED LASSA, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and for their Answer to Plaintiff's Complaint, state as follows:

1.      At all times relevant to this lawsuit, Plaintiff, BRENDA STRAIT ("Brenda"), was the mother of Plaintiff's decedent, DANNY WHITNEY ("Danny"), and was the duly appointed Personal Representative of Danny's estate, residing in the City of Traverse City, County of Grand Traverse, State of Michigan.

**ANSWER:**

Answering paragraph 1, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

2.      At all times relevant to this lawsuit, defendant, COUNTY OF GRAND TRAVERSE ("County"), is a political subdivision of the State of Michigan duly organized and carrying out governmental functions pursuant to the laws of Michigan, and one of the functions is to organize, operate, staff and supervise its detention center commonly known as Grand Traverse County Correctional Facility.

**ANSWER:**

Answering paragraph 2, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

2

3. At all times relevant to this lawsuit, defendant SHERIFF THOMAS BENSLEY ("Bensley"), was the Sheriff of Grand Traverse County Correctional Facility and the policy maker for the Grand Traverse County Correctional Facility and represented the ultimate repository of law enforcement power in the Grand Traverse facility. Bensley was acting within the scope of his employment and under color of state law in his official capacity and is being sued in his official capacity as policymaker and Sheriff, as well as in his individual capacity.

**ANSWER:**

Answering paragraph 3, Defendants admit that SHERIFF THOMAS BENSLEY was the Sheriff of Grand Traverse County at all times relevant to the lawsuit, and has both policy making and ultimate law enforcement power at the Grand Traverse County Sheriff's Department, including but not limited to, the Grand Traverse County Correctional Facility. Further admitted that Sheriff Bensley was acting within the scope of his employment and under color of state law at all times relevant to this lawsuit. No response is required as to whether Plaintiff is suing Sheriff Bensley in both his official and individual capacity.

4. Furthermore, Bensley had the charge and custody of the Grand Traverse County Correctional Facility and formulated and oversaw policies, practices, regulations, protocols, and customs therein and had the authority for hiring, screening, training, supervising, and disciplining of deputies, corrections officers and medical staff.

**ANSWER:**

Answering paragraph 4, denied that Bensley had the authority for training, supervising, and disciplining the medical staff. Admitted as to the balance of allegations therein.

5. At all times relevant to this lawsuit defendant SERGEANT ED LASSA ("Lassa")

was a deputy officer employed by County and who was acting under the color and pretense of ordinances, regulations, laws and customs of County and is being sued herein in his individual capacity.

**ANSWER:**

Answering paragraph 5, admitted only that SERGEANT ED LASSA was employed as a Sergeant with the Grand Traverse County Sheriff's Department, and was acting under color of state law, regulations, laws and customs of the County at all times relevant to this lawsuit. Neither admitted nor denied as to the balance of allegations therein.

6. At all times relevant to this lawsuit defendant DEPUTY SCOTT MARTIN ("Martin") was a deputy officer employed by County and who was acting under the color and pretense of ordinances, regulations, laws and customs of County and is being sued herein in his individual capacity.

**ANSWER:**

Answering paragraph 6, admitted only that DEPUTY SCOTT MARTIN was employed as a Deputy with the Grand Traverse County Sheriff's Department, and was acting under color of state law, regulations, laws and customs of the County at all times relevant to this lawsuit. Neither admitted nor denied as to the balance of allegations therein.

7. At all times relevant to this lawsuit, defendant CORRECTIONAL HEALTHCARE COMPANIES, INC. ("CHC") is a for-profit corporation licensed to do business in Michigan, with its principal place of business located in the state of Delaware. At all times pertinent hereto, CHC provided medical services to the County's jail, under the color and pretenses of ordinances, regulations, laws and customs of County and/or laws of the State of Michigan.

4

**ANSWER:**

Answering paragraph 7, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

8.     At all times relevant to this lawsuit, defendant HEALTH PROFESSIONALS, LTD., P.C., ("HPL"), is a for-profit corporation licensed to do business in Michigan, with its principal place of business located in the state of Michigan.   At all times pertinent hereto, HPL provided medical services to the County's jail, under the color and pretenses of ordinances, regulations, laws and customs of County and/or laws of the State of Michigan.

**ANSWER:**

Answering paragraph 8, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

9.     At all times relevant to this lawsuit, defendant STEPHANIE L. MILLER, LPN ("Miller"), licensed practical nurse, was an agent and/or employee of CHC and/or HPL and provided licensed practical nursing and/or medical services at the Grand Traverse County Correctional Facility including, but not limited to, inmates such as Danny Whitney, and is being sued herein in her individual capacity.

**ANSWER:**

Answering paragraph 9, admitted only that Defendant STEPHANIE L. MILLER, LPN, provided nursing and/or medical services at the Grand Traverse County Correctional Facility at all times relevant to this lawsuit.   Neither admitted nor denied as to the balance of allegations therein.

10.     At all times relevant to this lawsuit, defendant WILFRED SALDANHA, M.D. ("Saldanha"), was an agent and/or employee of CHC and/or HPL and provided medical services at the Grand Traverse County Correctional facility including, but not limited to, inmates such as Danny Whitney, and is being sued herein in his individual capacity.

**ANSWER:**

Answering paragraph 10, admitted only that Defendant WILFRED SALDANHA, M.D., provided nursing and/or medical services at the Grand Traverse County Correctional Facility at all times relevant to this lawsuit. Neither admitted nor denied as to the balance of allegations therein.

11.     At all times relevant to this lawsuit, the individually named defendants were at all times employees of Grand Traverse, CHC and/or HPL, acting within the scope of their employment.

**ANSWER:**

Answering paragraph 11, admitted only that SERGEANT ED LASSA, and DEPUTY SCOTT MARTIN were employees of Grand Traverse County at all times relevant to this lawsuit, and that SHERIFF THOMAS BENSLEY was the duly elected Sheriff of Grand Traverse County at all times relevant to this lawsuit. Neither admitted nor denied as to the balance of allegations therein.

12.     This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and under the laws of the United states, particularly under the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the statutes and common law of the State of Michigan.

6

**ANSWER:**

Answering paragraph 12, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

13.     This cause of action arose in the City of Traverse City, County of Grand Traverse, State of Michigan.

**ANSWER:**

Answering paragraph 13, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

14.     This Court has jurisdiction over this cause of action under the provisions of Title 28 of the United State Code, sections 1331 and 1342 and pendant jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

**ANSWER:**

Answering paragraph 14, admitted only that this Court has jurisdiction pursuant to Title 28 of the United States Code, section 1331.   Neither admitted nor denied as to the balance of allegations therein.

15.     All of the acts and/or omissions of the defendants set forth herein were done under the color and pretense of the statutes, ordinances, regulations, laws, customs and usages of the County of Grand Traverse and/or State of Michigan, and by virtue of and under the authority of the defendants' employment and/or agency relationship with Grand Traverse County.

**ANSWER:**

Answering paragraph 15, Defendants neither admit nor deny the allegations therein as

Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

16.     County is responsible for, and does in fact, hire, train, supervise and instruct corrections officers, detention officers and nurses, licensed practical nurses, and medical personnel of all grades in the performance of their duties.

**ANSWER:**

Answering paragraph 16, admitted only that the County hires, trains, supervises, and instructs corrections officers employed by the County. Neither admitted nor denied as to the balance of allegations therein.

17.     The amount in controversy exceeds $75,000.00, exclusive of Plaintiff's claims for costs, attorney fees, interest and punitive damages.

**ANSWER:**

Answering paragraph 17, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

18.     On or about 3:50 p.m. on March 2, 2011, Danny tested positive for drugs in district court probation by probation officer Margaret Drury.

**ANSWER:**

Answering paragraph 18, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint with the EXCEPTION that the correct date is March 2, 2012.

19.     Lassa presented to the district court probation to arrest Danny. Lassa noted Danny to be groggy.

8

**ANSWER:**

Answering paragraph 19, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

20.     Danny was questioned by Lassa regarding his drug use and Danny indicated he had taken four methadone pills and one Xanax pill.

**ANSWER:**

Answering paragraph 20, Defendants admit that both Lassa and probation officer, Margaret Drury, questioned Lassa regarding his drug use and Danny indicated he had taken four methadone pills and one Xanax pill.

21.     Lassa and Drury contacted the house where Danny was staying to check his prescription bottles.   A discrepancy was reported to Lassa in when the prescription was filled and how many pills were in the bottles.   There was no determination made as to the amount of methadone ingested by Danny.

**ANSWER:**

Answering paragraph 21, Defendants admit only that Lassa and Drury contacted the house where Danny was staying to check his prescription bottles, and that a discrepancy was noted in when the prescription was filled and how many pills were left in the bottles.   DENIED that no determination was made as to the amount of methadone ingested by Danny.

22.     Danny was brought to the Grand Traverse County Correctional Facility ("GTCF") by Lassa.

**ANSWER:**

Answering paragraph 22, Defendants admit the allegations contained in this paragraph of

9

Plaintiff's Complaint.

23.     Lassa decided to conduct a body cavity search of Danny due to the discrepancy of his medications and being under the influence of drugs.   Nothing was found.

**ANSWER:**

Answering paragraph 23, Defendants admit only that Lassa conducted a strip search of Danny due to the discrepancy in his prescription and being under the influence of drugs, and nothing was found.   Neither admitted nor denied as to whether a body cavity search was conducted by Lassa.

24.     Danny was placed on a bench in the booking area to await booking and during this time was noted to be groggy.

**ANSWER:**

Answering paragraph 24, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

25.     At approximately 5:35 p.m. Martin took Danny's vitals which were noted as blood pressure of 94/54, oxygen saturation of 83%, pulse of 67.

**ANSWER:**

Answering paragraph 25, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

26.     At approximately 5:38 p.m. a Jail Medical/Mental Questionnaire was completed by Martin which affirmatively confirmed that Danny uses methadone, and further confirmed that Danny abuses drugs and alcohol.

**ANSWER:**

Answering paragraph 26, Defendants admit only that the Jail Medical/Mental Questionnaire completed by Martin indicates that Danny answered "Yes" when asked "do you abuse alcohol or drugs of any kind?"  In further answer, Defendants admit only that that Jail Medical/Mental Questionnaire only indicates that Danny told Martin that he was taking methadone, Xanax, and blood pressure medication which were prescribed to him.  DENIED to the extent that the allegations herein seek to create the implication of any deliberate indifference by Martin or any of the other Defendants.

27.     The Jail Medical/Mental Questionnaire also documented Danny's medical history of high blood pressure.

**ANSWER:**

Answering paragraph 27, Defendants admit only that the Jail Medical/Mental Questionnaire completed by Martin indicates that Danny answered "Yes" when asked "have you been treated for high blood pressure?"  DENIED to the extent that the allegations herein seek to create the implication of any deliberate indifference by Martin or any of the other Defendants.

28.     At approximately 5:45 p.m., Martin entered the medical office and stated to Stephanie Miller, LPN ("Miller") that Danny appeared to be under the influence of something and reported Danny's pulse ox as 83%.

**ANSWER:**

Answering paragraph 28, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

29.     At approximately 5:54 p.m., Miller took Danny's vitals and gave him a glass of

11

water. Miller notes that Danny appeared drowsy and his speech was slurred. Danny's vitals were noted as blood pressure of 90/58, pulse ox of 96%, heart rate of 73.

**ANSWER:**

Answering paragraph 29, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

30. At approximately 6:00 p.m., Danny's blood pressure was noted as 87/60.

**ANSWER:**

Answering paragraph 30, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

31. Miller then advised Martin to place Danny in a cell in the intake area for observation. Danny was placed in observation cell 104. Danny was noted to be snoring very loudly.

**ANSWER:**

Answering paragraph 31, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

32. That after being placed in an observation cell, no deputy or medical provider ever re-evaluated Danny's vital signs.

**ANSWER:**

Answering paragraph 32, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

33. At approximately 8:45 p.m., Miller informed Martin that Saldanha had been

12

consulted regarding Danny's condition and advised to let him continue to sleep.

**ANSWER:**

Answering paragraph 33, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint.

34.     At approximately 8:54 p.m., Danny was noted to be passed out with his left arm falling over his face.   Soon thereafter, Danny was noted to be twitching and seizing.

**ANSWER:**

Answering paragraph 34, Defendants admit only that at approximately 8:54 p.m., Danny's left arm was seen slowly falling over his face, and that soon thereafter, Danny was seen twitching a few times.   DENIED that he was noted to be seizing.

35.     Throughout that time despite knowing Danny's history, drug intake, and current signs and symptoms, neither County's correctional officers, nor CHC and/or HPL's medical personnel had Danny examined by an nurse, doctor, or transported him to a hospital.

**ANSWER:**

Answering paragraph 35, to the extent that the allegations therein relate to County's correctional officers, DENIED.   Neither admitted nor denied as to the balance of allegations therein.

36.     Defendants' were aware that Danny was exhibiting signs and symptoms of methadone overconsumption, including dizziness, fatigue, drowsiness, pinpoint pupils, confusion, cold and clammy, snoring.

**ANSWER:**

Answering paragraph 36, Defendants deny all allegations contained in this paragraph of

Plaintiff's Complaint.

37.     For the rest of the day, the County's correctional officers and/or medical providers failed to timely perform their rounds and/or observation of Danny as is required of them by County's own policies and procedures.

**ANSWER:**

Answering paragraph 37, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

38.     Despite placing Danny in an observation, Danny was left with a blanket covering his head the entire time during incarceration.   At no time, did any correctional officer and/or medical provider enter into the observation cell and closely observe Danny under the blanket.

**ANSWER:**

Answering paragraph 38, Defendants deny all allegations as stated since they create the false and erroneous presumption that Defendants violated Danny's constitutional rights, and/or violated any County custom, policy, and/or procedure, by allowing Danny to sleep with a blanket covering his head, and by not observing him under the blanket.

39.     At approximately 11:00 p.m., corrections officers found Danny to be unresponsive with foamy froth from his mouth, vomit in the area, cape cyanosis, and arm discoloration.   Danny was pronounced dead.

**ANSWER:**

Answering paragraph 39, Defendants admit only that at approximately 11:00 p.m., corrections officers found Danny unresponsive with foam around his mouth, and arm discoloration.   Further admitted that Danny was pronounced dead at approximately 11:25 p.m.

14

Neither admitted nor denied as to the balance of allegations therein.

40.     The autopsy report concluded Danny's death was a result of acute methadone toxicity.

**ANSWER:**

Answering paragraph 40, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

41.     Further, Danny was no stranger to the employees and staff at the GTCF having been detained in said facility eleven times through the date of his death.   The defendants and staff of GTCF knew Danny was at high risk for methadone overdose, toxicity, and death.

**ANSWER:**

Answering paragraph 41, Defendants admit only that Danny had been incarcerated at the GTCF on several occasions prior to his death on March 2, 2012.   DENIED as to the remainder of allegations therein.

42.     At all times during his incarceration at the GTCF, Danny was never provided appropriate medical assistance or transferred to a hospital.

**ANSWER:**

Answering paragraph 42, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

43.     Defendants, staff members and agents were fully aware of Danny's delicate state and his deteriorating condition.

15

**ANSWER:**

Answering paragraph 43, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

44.     While Danny was in the cell, Danny behaved in such a fashion that was highly evident that he was rapidly deteriorating and needed prompt and immediate medical treatment.

**ANSWER:**

Answering paragraph 44, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

45.     Despite knowledge of Danny's visible medical condition and deterioration of his condition, the County did not initiate any close observation of Danny or take proper precautions to protect Danny, nor did they take steps to property and adequately monitor Danny.

**ANSWER:**

Answering paragraph 45, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

46.     Defendants, and/or their employees and agents ignored Danny's symptoms and left him in the holding cell without further monitoring and/or assistance.

**ANSWER:**

Answering paragraph 46, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

<u>**COUNT I**</u>
<u>**DENIAL OF MEDICAL TREATMENT-FOR SERIOUS MEDICAL NEEDS-ALL**</u>
<u>**DEFENDANTS**</u>

47.     Plaintiff repeats, realleges and incorporates by reference each and every allegation

contained in paragraphs 1 through 45 as though fully set forth herein.

**ANSWER:**

Answering paragraph 47, Defendants incorporate by reference paragraphs 1 through 46 as if fully set forth herein.

48.     At all times mentioned herein, while defendants were acting under color of statute, ordinances, regulations and/or customs of the State of Michigan, County of Grand Traverse, City of Traverse City, defendants subjected Danny to a deprivation of his rights, privileges and immunities secured by the Constitutions and laws of the United States and the State of Michigan.

**ANSWER:**

Answering paragraph 48, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

49.     Pursuant to 42 U.S.C. §1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution, defendant County of Grand Traverse and the individually named corrections officers and medical staff owed Danny duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

**ANSWER:**

Answering paragraph 49, DENIED to the extent that the allegations therein seek to imply that Defendants deprived Danny of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution, and/or violated 42 U.S.C. §1983.

50.     Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United Sates Constitution, the Civil Rights Acts, specially 42 USC §1983, as well as under the Michigan Constitution, a prisoner like Danny was the right to medical treatment for serious medical needs

while in custody as well as to be free from cruel and unusual punishment.

**ANSWER:**

Answering paragraph 50, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

51.     Defendants owed a duty to the general public, but to Danny in particular, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to prisoners, as well as to train, test, evaluate, review, and update its officers' and medical personnel's abilities to function in a reasonable manner and in conformance with the laws of the United States of Michigan relative to providing prisoners with the necessary medical attention.

**ANSWER:**

Answering paragraph 51, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

52.     Each and every one of the defendants violated Danny's civil rights when they displayed deliberate indifference to Danny's serious medical condition in the following ways, including but not limited:

a.    Failure to properly train jail personnel in the evaluation of whether a detainee needs medical treatment;

b.    Failure to provide Danny with immediate medical attention when the defendants each became subjectively aware of Danny's objectively serious medical need;

c.    Failure to transfer Danny to a hospital;

d.    Failure to assure that County, CHC and/or HPL personnel at the jail examined and after he had been exhibiting objective signs of methadone overdose and/or methadone toxicity;

18

e.  Failure to procure medical treatment for Danny by either the County, CHC and/or HPL personnel at the jail or have him transferred to a healthcare facility/hospital;

f.  Failure to train its officers on how to obtain medical attention for detainee's who show obvious signs of methadone overdose and/or toxicity;

g.  Failure to do rounds on detainees as required by County policy;

h.  Failure to staff jail with nurses, licenses practical nurses, or doctors who were competent and licenses to perform physical examination and promptly diagnose an emergent medical condition such as methadone overdose and/or methadone toxicity; and

i.  Any other breaches which become known during the course of discovery.


**ANSWER:**

Answering paragraph 52, Defendants deny all allegations contained in this paragraph of

Plaintiff's Complaint.

a.  DENIED;
b.  DENIED;
c.  DENIED;
d.  DENIED as to County and County personnel;
e.  DENIED as to County and County personnel;
f.  DENIED;
g.  DENIED;
h.  DENIED; and
i.  DENIED.

53.  As a direct and proximate result of the above cited violations of Danny's civil rights

by defendants, Danny died and thus his estate, through Brenda, has and will continue to suffer

damages in the future, including, but not limited to:

a.  Reasonable medical, hospital, funeral and burial expenses;
b.  Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first medical symptoms and his death;
c.  Loss of financial support;
d.  Loss of service;
e.  Loss of gifts or other valuable gratitude's;
f.  Loss of parental training and guidance;
g.  Loss of expected inheritance;
h.  Loss of society and companionship; and
i.  Any and all other damages identified through the course of discovery otherwise

available under the Michigan Wrongful Death Act, *MCLA §600.2922.*

**ANSWER:**

Answering paragraph 53, Defendants deny all allegations contained in this paragraph of

Plaintiff's Complaint.

> a-i.    Answering paragraph 53 (a)-(i), Defendants neither admit nor deny the
> allegations therein as Defendants lack sufficient knowledge or information
> to form a belief as to the truth of the allegations and leave Plaintiff to her
> proofs.

WHEREFORE, Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS

BENSLEY, DEPUTY SCOTT MARTIN, and SERGEANT ED LASSA, pray this Honorable

Court for a Judgment of No Cause for Action together with costs and attorney fees.

## COUNT II

## FAILURE TO TRAIN, INADEQUATE POLICIES AND/OR PROCEDURES, CUSTOMS AND PRACTICES AND FAILURE TO SUPERVISE-DELIBERATE INDIFFERENCE-COUNTY, BENSLEY, CHC AND HPL

54.    Plaintiff repeats, realleges and incorporates by reference each and every allegation

contained in paragraphs 1 through 53 as though fully set forth herein.

**ANSWER:**

Answering paragraph 54, Defendants incorporate by reference paragraphs 1 through 53 as

if fully set forth herein.

55.    Pursuant to 42 USC §1983, as well as the 4th and 14th Amendments to the United

States Constitution, County, Bensley, CHC and/or HPL owed Danny certain duties to properly

supervise, monitor and train its correctional officers and medical staff so as to monitor and

supervise the jail's prisoners so that they would detect serious medical conditions and facilitate

prompt and immediate medical attention and/or transport to a hospital.

**ANSWER:**

Answering paragraph 55, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

56.     County, Bensley, CHC and/or HPL breached these duties via their policies, procedures, regulations, customs and/or lack of training and thus exhibited a deliberate indifference toward its prisoners, and Danny specifically, in the following ways, including but not limited to:

     a.     County, CHC and/or HPL's failure to staff the jail with competent medical personnel;

     b.     County, CHC and/or HPL's failure to monitor their correctional officers and medical personnel to ensure that they adequately monitor and supervisor inmates who have serious medical needs;

     c.     County, CHC and/or HPL's failure to have proper policies and procedures, and training to deal with inmates in the observation cell and ensure that they policies and/or procedures are followed, which include serial examinations by competent and licensed medical personnel like RNs and/or doctors;

     d.     Failure to ensure the correctional officers conduct timely and adequate rounds and record their observations of the prisoners as required by their own policies and/or procedures;

     e.     County, CHC and/or HPL's failure to fully investigate and discipline its correctional officers and/or medical personnel who do not abide by its policies and procedures relative to medical care for serious conditions; and

     f.     All other breaches learned through the course of discovery.

**ANSWER:**

Answering paragraph 56, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

     a.     DENIED as to County and Bensley;

     b.     DENIED as to County and Bensley;

     c.     DENIED as to County and Bensley;

     d.     DENIED;

     e.     DENIED as to County and Bensley; and

21

        f.     DENIED.

57.     As a direct and proximate result of County, Bensley, CHC and/or HPL's deliberate indifference to Danny via its inadequate training, policy, procedures and/or customs, Danny died and his estate via, Brenda, has and will continue to suffer damages into the future, including, but not limited to:

    a.    Reasonable medical, hospital, funeral and burial expenses;
    b.    Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first medical symptoms and his death;
    c.    Loss of financial support;
    d.    Loss of service;
    e.    Loss of gifts or other valuable gratitude's;
    f.    Loss of parental training and guidance;
    g.    Loss of expected inheritance;
    h.    Loss of society and companionship; and
    i.    Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA §600.2922.*

**ANSWER:**

Answering paragraph 57, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

    a-g.    Answering paragraph 57 (a)-(g), Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

WHEREFORE, Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN, and SERGEANT ED LASSA, pray this Honorable Court for a Judgment of No Cause for Action together with costs and attorney fees.

## COUNT III
## GROSS NEGLIGENCE, INTENTIONAL, WILLFUL AND WANTON CONDUCT-ALL DEFENDANTS

58.     Plaintiff repeats, realleges and incorporates by reference each and every allegation

contained in paragraphs 1 through 57 as though fully set forth herein.

**ANSWER:**

Answering paragraph 58, Defendants incorporate by reference paragraphs 1 through 57 as if fully set forth herein.

59.     At all relevant times, the individually named corrections officers and medical staff were acting within the course and scope of their employment with the County, CHC, and/or HPL as law enforcement officers and medical providers.

**ANSWER:**

Answering paragraph 59, Defendants admit the allegations contained in this paragraph of Plaintiff's Complaint as they pertain to them. Neither admitted nor denied as to allegations as they pertain to CHC, and/or HPL.

60.     That defendants County, CHC, and/or HPL and the individually named defendants owed Danny the duty to provide medical care for his obviously serious medical needs.

**ANSWER:**

Answering paragraph 60, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

61.     That defendants County, CHC, and/or HPL and the individually named defendants, acting within the scope of their employment, breached this duty and were grossly negligent as that term is defined in MCL 691.1407(2)(c), when they acted intentionally by the actions described above, said acts having been committed intentionally or so recklessly as to demonstrate a substantial lack of concern as to whether injury would result and/or their acts of willful and wanton

23

misconduct toward Danny and in disregard for his health, safety and constitutional/statutory rights.

**ANSWER:**

Answering paragraph 61, Defendants deny all allegations contained in this paragraph of

Plaintiff's Complaint.

62.     At all relevant times, defendant County, CHC, and/or HPL and the individually

named defendants were grossly negligent in one or more of the following ways:

a.     Failure to properly train jail personnel in the evaluation of whether a detainee needs medical treatment;
b.     Failure to provide Danny with immediate medical attention;
c.     Failure to transfer Danny to a hospital;
d.     Failure to assure that County, CHC and/or HPL personnel at the jail examined and after he had been exhibiting objective signs of methadone overdose and/or methadone toxicity;
e.     Failure to procure medical treatment for Danny by either the County, CHC and/or HPL personnel at the jail or have him transferred to a hospital;
f.     Failure to train its officers on how to obtain medical attention for detainee's who show obvious signs of methadone overdose and/or toxicity;
g.     Failure to do rounds on detainees as required by County policy;
h.     Failure to staff jail with nurses, licenses practical nurses, or doctors who were competent and licenses to perform physical examination and promptly diagnose an emergent medical condition such as methadone overdose and/or methadone toxicity; and
i.     Any other breaches which become known during the course of discovery.


**ANSWER:**

Answering paragraph 62, Defendants deny all allegations contained in this paragraph of

Plaintiff's Complaint.

a.     DENIED;
b.     DENIED;
c.     DENIED;
d.     DENIED as to Defendants;
e.     DENIED as to Defendants;
f.     DENIED;
g.     DENIED;

24

        h.     DENIED;

        j[sic].  DENIED.

63.    As the direct and proximate result of the above cited violations of Danny's civil rights by defendants, Danny died and thus his estate, through Brenda, has and will continue to suffer damages in the future, including, but not limited to:

    a.     Reasonable medical, hospital, funeral and burial expenses;
    b.     Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first medical symptoms and his death;
    c.     Loss of financial support;
    d.     Loss of service;
    e.     Loss of gifts or other valuable gratitude's;
    f.     Loss of parental training and guidance;
    g.     Loss of expected inheritance;
    h.     Loss of society and companionship; and
    i.     Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA §600.2922.*

**ANSWER:**

Answering paragraph 63, Defendants deny all allegations contained in this paragraph of Plaintiff's Complaint.

    a-i.   Answering paragraph 63 (a)-(i), Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to her proofs.

WHEREFORE, Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN, and SERGEANT ED LASSA, pray this Honorable Court for a Judgment of No Cause for Action together with costs and attorney fees.

**COUNT IV**
**MEDICAL MALPRACTICE-CHC, HPL, MILLER**

64.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 63 as though fully set forth herein.

25

**ANSWER:**

Answering paragraph 64, Defendants incorporate by reference paragraphs 1 through 63 as if fully set forth herein.

65. At all times relevant to this lawsuit, jail medical personnel, Miller was CHC and/or HPL's employee and/or actual agent and/or apparent/ostensible agent of CHC and/or HPL and acting in the course and scope of her employment with CHC and/or HPL, and thus CHC and/or HPL is vicariously liable for Miller's acts of medical malpractice pursuant to the doctrine of Respondent Superior.

66. CHC and/or HPL via Miller undertook and had a duty to provide Danny with competent medical care and treatment which would at all times be in accordance with acceptable medical practice in the community.

67. CHC and/or HPL, as well as their actual and/or implied agents, servants, employees, including physicians and licenses practical nurses such as Miller, breached the above duties and obligations owed to Danny, by acting in variance with acceptable standards of medical practice in the community and are thus professionally negligent and grossly negligent, in the following ways, including but not limited to:

    a. failing to timely and appropriately communicate with and among the medical and nursing staff regarding Danny's condition and complaints;
    b. failing to perform an accurate and complete medical and risk assessment of Danny;
    c. failing to timely and appropriately examine and treat Danny;
    d. failing to timely and appropriately communicate with the physician and/or supervisory personnel regarding an inmate's medical complaint;
    e. failing to timely obtain medical attention for Danny when obvious risk facts for medical complications were present;
    f. failing to timely and appropriately transfer to a hospital;
    g. failing to carry out or refer Danny for treatment including attention to and management of Danny's airway to ensure Danny could breathe;
    h. failing to timely obtain appropriate medical care in a timely fashion, such as transfer

to a hospital;

i. failing to request and ensure transfer to a hospital for a complete physical work up, to include medical testing, laboratory studies and any additional testing that may be necessary;

j. failing to monitor an inmate in a timely fashion, while that inmate is under observation;

k. failing to ensure that all appropriate protocols, including obtaining vital signs are followed;

l. failing to ensure that policies and procedures of jail infirmary are followed;

m. failing to ensure that proper assessment of Danny is made and recognize a medical emergency, including but not limited to methadone overdose; and,

n. failing to timely initiate and pursue chain of command; and

o. Any and all other breaches of the standard of care found to be violated through the course of discovery.

68. As a direct and proximate result of CHC, HPL, and Miller's negligence, grossly negligent acts and/or omissions, Danny died, and thus his estate via Brenda has and continues to incur damages, including but not limited to:

a. Reasonable medical, hospital, funeral and burial expenses;

b. Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first medical symptoms and his death;

c. Loss of financial support;

d. Loss of service;

e. Loss of gifts or other valuable gratitude's;

f. Loss of parental training and guidance;

g. Loss of expected inheritance;

h. Loss of society and companionship; and

i. Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA §600.2922.*

**ANSWER:**

Answering paragraphs 65-68, no response is required by these Defendants to allegations contained under Count IV of Plaintiff's Complaint since the allegations therein are solely against CHC, HPL, and Miller, and not against any of these Defendants.

## COUNT V
## MEDICAL MALPRACTICE – CHC, HPL, SALDANHA

69.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 68 as though fully set forth herein.

**ANSWER:**

Answering paragraph 69, Defendants incorporate by reference paragraphs 1 through 68 as if fully set forth herein.

70.    At all times relevant to this lawsuit, Saldanha was a CHC and/or HPL employee and/or actual agent and/or apparent/ostensible agent of CHC and/or HPL and acting in the course and scope of his employment with CHC and/or HPL, and thus, CHC and/or HPL is vicariously liable for jail medical personnel's acts of medical malpractice pursuant to the doctrine of Respondent Supervisor.

71.    CHC, HPL and Saldanha undertook and had a duty to provide Danny with competent and appropriate medical care and treatment which would at all times be in accordance with acceptable medical practice in the community.

72.    CHC, HPL and Saldanha as well as their actual and/or implied agents, servant, employees, including physicians, breached the above duties and obligations owed to Danny by acting in variance with acceptable standards of medical practice in the community and are thus professional negligent and grossly negligent in the following ways, including but not limited to:

a.    Failing to timely and appropriately come to the prison to examine and treat Danny;
b.    Failing to timely and appropriately communicate with the medical and nursing staff regarding Danny's medical complaint;
c.    Failing to timely obtain medical attention for Danny when obvious risk facts for medical complications were present;
d.    Failing to timely and appropriately transfer to a hospital;

e.    Failing to timely obtain appropriate medical care in a timely fashion, such as transfer to a hospital;

f.    Failing to carry out or refer Danny for treatment including attention to and management of Danny's airway to ensure Danny could breathe;

g.    Failing to request and ensure transfer to a hospital for a complete physical work up, to include medical testing, laboratory studies, and any additional testing that may be necessary;

h.    Failing to monitor an inmate in a timely fashion, while that inmate is under observation;

i.    Failing to ensure that nursing staff is following all appropriate protocols, including obtaining vital signs;

j.    Failing to ensure that policies and procedures of a jail infirmary are followed;

k.    Failing to ensure that proper assessment of Danny is made and recognize a medical emergency, including but not limited to methadone overdose; and,

l.    Any and all other breaches of the standard of care found to be violated through the course of discovery.

73.    As a direct and proximate result of CHC, HPL and Saldanha's negligence and grossly negligent acts and/or omissions, Danny died, and thus his estate via Brenda has and continues to incur damages, including but not limited to:

a.    Reasonable medical, hospital, funeral and burial expenses;

b.    Reasonable compensation for the pain and suffering undergone by Danny while he was conscious during the time between his first medical symptoms and his death;

c.    Loss of financial support;

d.    Loss of service;

e.    Loss of gifts or other valuable gratitude's;

f.    Loss of parental training and guidance;

g.    Loss of expected inheritance;

h.    Loss of society and companionship; and

i.    Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, *MCLA §600.2922.*

**ANSWER:**

Answering paragraphs 70-73, no response is required by these Defendants to allegations contained under Count V of Plaintiff's Complaint since the allegations therein are solely against CHC, HPL, and Saldanha, and not against any of these Defendants.

WHEREFORE, Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS

BENSLEY, DEPUTY SCOTT MARTIN, and SERGEANT ED LASSA, pray this Honorable

Court for a Judgment of No Cause for Action together with costs and attorney fees.

Dated: July 15, 2014                CUMMINGS, McCLOREY, DAVIS
                                          & ACHO, P.L.C.

                                    /s/ Haider A. Kazim
                                    T. Joseph Seward (P35095)
                                    Haider A. Kazim (P66146)
                                    Attorneys for Defs. COUNTY OF GRAND
                                    TRAVERSE, SHERIFF BENSLEY,
                                    DEPUTY MARTIN and SGT. LASSA

T:\grandtrav\Whitney v Grand Traverse Lawsuit\Pleadings\Answer to Complaint_7-11-14.docx

30

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the ESTATE OF DANNY
WHITNEY, Deceased,

        Plaintiff,

v

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY, DEPUTY
SCOTT MARTIN, SERGEANT ED
LASSA, CORRECTIONAL
HEALTHCARE COMPANIES, INC.,
HEALTH PROFESSIONALS, LTD, P.C.
STEPHANIE L. MILLER, LPN and
WILFRED P. SALDANHA, M.D., Jointly
and Severally,

        Defendants.

HON. PAUL L. MALONEY
U.S. DISTRICT COURT JUDGE

FILE NO. 1:14-cv-00630-PLM

**DEFENDANTS COUNTY OF GRAND
TRAVERSE, SHERIFF THOMAS
BENSLEY, DEPUTY SCOTT MARTIN,
AND SERGEANT ED LASSA'S
AFFIRMATIVE DEFENSES**

_____/

Ven R. Johnson (P39219)
Juliana B. Sabantini (P64367)
JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold, Ste. 2632
Detroit, MI 48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
jsabatini@venjohnsonlaw.com

Randall A. Juip (P58538)
Brian J. Richtarcik (P49390)
FOLEY, BARON, METZGER & JULIP, PLLC
Attorneys for Defs. CORRECTIONAL
HEALTHCARE COMPANIES, HEALTH
PROFESSIONALS, LTD., P.C., MILLER
and SALDANHA
38777 Six Mile Road, Ste. 300
Livonia, MI 48152
(734) 742-1800/(734) 521-2379 Fax
rajuip@fbmilaw.com
brichtarcik@fbmjlaw.com
_____/

T. Joseph Seward (P35095)
Haider A. Kazim (P66146)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defs. COUNTY OF GRAND
TRAVERSE, SHERIFF BENSLEY,
DEPUTY MARTIN and SGT. LASSA
400 W. Front Street, Ste. 200
Traverse City, MI 49684
(231) 922-1888
hkazim@cmda-law.com

**DEFENDANTS COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN, AND SERGEANT ED LASSA'S AFFIRMATIVE DEFENSES**

NOW COME Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN, and SERGEANT ED LASSA, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and give notice that at or before the time of trial, and subject to completion of discovery, they will rely upon all of the following defenses:

1.      Plaintiff has failed to state a claim upon which relief can be granted.

2.      Defendants are entitled to invoke the doctrine of governmental immunity.

3.      Defendant SHERIFF THOMAS BENSLEY is entitled to qualified immunity which shields him from civil damages liability and, therefore, bars this claim as a matter of law. *Harlow v Fitzgerald*, 457 US 800 (1982); *Malley v Briggs*, 475 US 335 (1986).

4.      Defendant DEPUTY SCOTT MARTIN is entitled to qualified immunity which shields him from civil damages liability and, therefore, bars this claim as a matter of law. *Harlow v Fitzgerald*, 457 US 800 (1982); *Malley v Briggs*, 475 US 335 (1986).

5.      Defendant SERGEANT ED LASSA is entitled to qualified immunity which shields him from civil damages liability and, therefore, bars this claim as a matter of law. *Harlow v Fitzgerald*, 457 US 800 (1982); *Malley v Briggs*, 475 US 335 (1986).

6.      At all times material to Plaintiff's Complaint, Defendants were acting in the course of their official law enforcement duties.   As such, Defendants are entitled to immunities granted to them by MCL 691.1407; MSA 3.996(107), said statute commonly referred to as the Michigan Government Tort Liability act.

7.      Plaintiff's claim is barred by immunity and/or qualified immunity for the reason that Defendants acted in good faith and acted in a reasonable manner in the performance of their duties and acted without malicious intention to cause deprivation of constitutional rights or other injury to the Plaintiff and/or Plaintiff's decedent.

8.      Defendants are entitled to summary judgment as a matter of law, as at all times relevant to Plaintiff's Complaint, Defendants were acting in good faith and in conformity with the actions of a reasonable law enforcement officer.

9.      Any damages and/or injuries sustained by Plaintiff's decedent were solely and proximately caused by decedent and not by Defendants.

10.     Individual Defendants assert that none of their actions/inactions amount to gross negligence and thus there can be no claim against them.

11.     Defendant, COUNTY OF GRAND TRAVERSE, is a governmental entity engaged in the exercise of governmental functions and, accordingly, any claims are barred by reason of immunity granted by law.

12.     SHERIFF THOMAS BENSLEY is the duly elected sheriff of Grand Traverse County and, accordingly, any claims are barred by reason of immunity granted by law.

13.     Pursuant to statute and case law neither an agency nor sheriff may be vicariously liable for the purported acts of a deputy, officer or employee.

14.     There is no liability in this matter pursuant to 42 USC 1983, or any other alleged federal or constitutional provisions, for the reason that Defendants are immune from such claims under the circumstances of this case, and Plaintiff has an adequate remedy under state law.

15.     As a matter of law, Plaintiff cannot maintain her state law claims because the

Defendants' conduct was not the "sole proximate cause" of Plaintiff's alleged injuries.

16.     Plaintiff's Complaint must be dismissed, in its entirety, as the alleged actions or inactions of Defendants could not reasonably be construed to comprise a proximate cause of Plaintiff's decedent's injuries and/or damages.

17.     None of the alleged actions or alleged failures to act of  Defendants purportedly forming the basis of Plaintiff's Complaint, were malicious, willful, wanton, or in reckless disregard of Plaintiff's and/or Plaintiff's decedent's rights.

18.     There is no 42 U.S.C. §1983 liability for negligent conduct.

19.     Punitive damages are not allowable on some or all of the counts and theories pled in the Complaint.

20.     Plaintiff cannot recover punitive damages from Defendants.

21.     Any and all injuries or damages claimed are solely due to the actions or inactions of others over whom Defendants had neither responsibility nor control, and such actions or inactions constitute intervening, superseding cause not foreseeable to Defendants.

22.     Any alleged damages which have been sustained by Plaintiff were caused in total or in part by Plaintiff's decedent's own willful acts and therefore any recovery by Plaintiff must be reduced either wholly or in part accordingly.

23.     None of the individually named County Defendants possessed the knowledge from which any of them could have concluded that Plaintiff's decedent was at risk and then disregarded that risk.

24.     The collective knowledge regarding Plaintiff's decedent cannot be imputed to the individually named County Defendants.

4

25.     Defendants reserve the right to add to, supplement, change or amend any and all of

their Affirmative Defenses as facts become known through discovery.

Dated:   July 15, 2014                    CUMMINGS, McCLOREY, DAVIS
                                          & ACHO, P.L.C.


                                           /s/ Haider A. Kazim
                                          T. Joseph Seward (P35095)
                                          Haider A. Kazim (P66146)
                                          Attorneys for Defs. COUNTY OF GRAND
                                          TRAVERSE, SHERIFF BENSLEY,
                                          DEPUTY MARTIN and SGT. LASSA


T:\grandtrav\Whitney v Grand Traverse Lawsuit\Pleadings\Affirmative Defenses_7-14-14.docx

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the ESTATE OF DANNY
WHITNEY, Deceased,

         Plaintiff,

v

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY, DEPUTY
SCOTT MARTIN, SERGEANT ED
LASSA, CORRECTIONAL
HEALTHCARE COMPANIES, INC.,
HEALTH PROFESSIONALS, LTD, P.C.
STEPHANIE L. MILLER, LPN and
WILFRED P. SALDANHA, M.D., Jointly
and Severally,

         Defendants.

HON. PAUL L. MALONEY
U.S. DISTRICT COURT JUDGE

FILE NO. 1:14-cv-00630-PLM

**DEFENDANTS, COUNTY OF GRAND
TRAVERSE, SHERIFF THOMAS
BENSLEY, DEPUTY SCOTT MARTIN
AND SERGEANT ED LASSA'S
RELIANCE UPON JURY DEMAND**

_____/

Ven R. Johnson (P39219)
Juliana B. Sabantini (P64367)
JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold, Ste. 2632
Detroit, MI  48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
jsabatini@venjohnsonlaw.com

Randall A. Juip (P58538)
Brian J. Richtarcik (P49390)
FOLEY, BARON, METZGER & JULIP, PLLC
Attorneys for Defs. CORRECTIONAL
HEALTHCARE COMPANIES, HEALTH
PROFESSIONALS, LTD., P.C., MILLER
and SALDANHA
38777 Six Mile Road, Ste. 300
Livonia, MI  48152
(734) 742-1800/(734) 521-2379 Fax
rajuip@fbmilaw.com
brichtarcik@fbmjlaw.com
_____/

T. Joseph Seward (P35095)
Haider A. Kazim (P66146)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defs. COUNTY OF GRAND
TRAVERSE, SHERIFF BENSLEY,
DEPUTY MARTIN and SGT. LASSA
400 W. Front Street, Ste. 200
Traverse City, MI 49684
(231) 922-1888
hkazim@cmda-law.com

## DEFENDANTS, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN AND SERGEANT ED LASSA'S RELIANCE UPON JURY DEMAND

NOW COME Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF THOMAS BENSLEY, DEPUTY SCOTT MARTIN and SERGEANT ED LASSA, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and hereby gives notice of their reliance upon the Jury Demand previously filed.

Dated:   July 15, 2014                CUMMINGS, McCLOREY, DAVIS
                                       & ACHO, P.L.C.

                                        /s/ Haider A. Kazim
                                       T. Joseph Seward (P35095)
                                       Haider A. Kazim (P66146)
                                       Attorneys for Defs. COUNTY OF GRAND
                                       TRAVERSE, SHERIFF BENSLEY,
                                       DEPUTY MARTIN and SGT. LASSA

T:\grandtrav\Whitney v Grand Traverse Lawsuit\Pleadings\Reliance - July 15 14.docx

2