## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the ESTATE OF DANNY
WHITNEY, Deceased,

                              Case No. 14-cv-00630-PLM

        Plaintiff,             Hon. Paul L. Maloney

v

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY, DEPUTY
SCOTT MARTIN, SERGEANT ED LASSA,
CORRECTIONAL HEALTHCARE COMPANIES,
INC., HEALTH PROFESSIONALS, LTD, P.C.,
STEPHANIE L. MILLER, LPN and WILFRED P.
SALDANHA, M.D., Jointly and Severally,

        Defendants.

---

Ven R.Johnson (P39219)
Juliana B. Sabantini (P64367)
JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold, Ste. 2632
Detroit, MI 48226
313.324.8300

Randall A. Juip (P58538)
Brian J. Richtarcik (P49390)
FOLEY, BARON, METZGER & JULIP, PLLC
Attorneys for Correctional Healthcare Companies,
Health Professionals, Ltd., P.C, Miller and Saldanha
38777 Six Mile Road, Ste. 300
Livonia, MI 48152
734.742.1800/734.521.2379 (Fax)

T. Joseph Seward (P35095)
Haider A. Kazim (P66146)
CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.
Attorneys for County Of Grand Traverse,
Sheriff Bensley, Sgt Lassa & Deputy Martin
400 W. Front Street, Ste. 200
Traverse City, MI 49684
231.922.1888

---

## DEFENDANTS' MOTION TO DISMISS ON BEHALF OF GRAND TRAVERSE COUNTY, SHERIFF BENSLEY, SERGEANT LASSA AND DEPUTY MARTIN

1.      This case arises out of the death of Danny Whitney while being held at the Grand Traverse County Correctional Facility on a probation violation. (Complaint, attached as **Ex. 1**).

2.      On June 11, 2014, Brenda Strait, as Personal Representative of the Estate of Danny Whitney, filed the present Complaint against County of Grand Traverse, Sheriff Thomas Bensley, Deputy Scott Martin, Sergeant Ed Lassa, Correctional Healthcare Companies, Inc. (CHC), Health Professionals, Ltd., P.C. (HPL), Stephanie L. Miller, L.P.N., and Wilfred P. Saldanha, M.D. Plaintiff has alleged: Count I – a § 1983 claim against all Defendants for the denial of medical treatment for serious medical needs; Count II – a § 1983 claim against Grand Traverse County, Sheriff Bensley, CHC and HPL for failure to train, inadequate policies and/or procedures, customs and practices and failure to supervise; and Count III – gross negligence, intentional, willful and wanton conduct against all Defendants; Count IV – medical malpractice against CHC, HPL and Miller; and Count V – medical malpractice against CHC, HPL and Dr. Saldanha. (**Ex. 1**).

3.      A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c).

4.      Pleadings are considered "closed" once the once a complaint and answer have been filed. Fed. R. Civ. P. 7(a).

5.     Here, the Complaint was filed on June 11, 2014, and Defendants' Answer was filed on July 15, 2014. Therefore, a Motion to Dismiss based upon Rule 12(c) is appropriate.

6.     A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.

7.     Plaintiffs have alleged that Defendants' actions were in violation of the decedent's Eighth Amendment right to be free from cruel and unusual punishment.

8.     However, the Eighth Amendment's prohibition against cruel and unusual punishment is applicable only to those convicted of crimes.

9.     Although the decedent was arrested for violating the conditions of his probation for a prior conviction, he had not been convicted and sentenced based on the probation violation.

10.     As a result, the decedent was not entitled to the protection of the Eighth Amendment at the time of Defendants' alleged conduct, and thus cannot state a claim for violation of his Eighth Amendment rights.

11.     In addition, Plaintiff fails to plead facts alleging that Sheriff Bensley – who serves in his supervisory capacity – was personally involved in the events underlying the suit in order to state plausible claims for relief.

12.     Government officials cannot be vicariously liable for the actions of their subordinates, and supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior.

13.     Plaintiff has failed to adequately satisfy these pleading requirements by failing to allege any personal involvement of Sheriff Bensley.

14.     Consequently, Plaintiff's constitutional claims against Sheriff Bensley should be dismissed.

15.     Furthermore, Defendants Lassa and Martin are entitled to the defense of qualified immunity.

16.     Plaintiff alleges that Defendants Lassa and Martin were deliberately indifferent to the decedent's serious medical needs when they failed to provide him with adequate medical care.

17.     Deliberate indifference is a very high standard – a showing of simple negligence or even heightened negligence is not sufficient; the conduct for which liability attaches must demonstrate deliberateness equivalent to an intent to punish.

18.     Moreover, the failure to follow internal policies does not amount to a constitutional violation.

19.     This Court should dismiss Plaintiff's § 1983 claims because Plaintiff fails to identify which of the Defendants allegedly violated the decedent's constitutional rights.

4

20.     In addition, on the facts as alleged, there is nothing to suggest that Defendants Lassa and Martin acted with the requisite intent to support a claim of deliberate indifference; none of the conduct attributable to either Sgt. Lassa or Deputy Martin is the equivalent of an intent to punish.

21.     Accordingly, Defendants Lassa and Martin are entitled to the defense of qualified immunity.

22. A determination that neither Sgt. Lassa nor Deputy Martin violated the decedent's constitutional rights resolves the claim against the County as well.

23.     Plaintiff's state law claims should also be dismissed for several reasons.

24.     First, Plaintiff's state law claims against Sheriff Bensley, Sergeant Lassa and Deputy Martin are barred by the statute of limitations pursuant to M.C.L. 600.5805(7).

25.     In addition, Plaintiff's state law claims should be dismissed because Defendants are entitled to governmental immunity.

26.     Not only are the claims against the County are barred by the application of governmental immunity, but as the highest elected official of the Grand Traverse County Sheriff's Department, Sheriff Bensley is entitled to absolute immunity from tort liability.

27.     Likewise, governmental immunity bars Plaintiff's state tort claims against Defendants Lassa and Martin.

5

28.     Defendants have sought concurrence in the relief sought, but has been unable to obtain such concurrence.

Wherefore, for the foregoing reasons, the Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF BENSLEY, SERGEANT LASSA AND DEPUTY MARTIN, respectfully request that this Honorable Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c), thereby dismissing the Complaint against these Defendants in its entirety.

Dated:  August 19, 2014                              CUMMINGS, McCLOREY, DAVIS
                                                               & ACHO, P.L.C.

                                                        /s/ T. Joseph Seward
                                                       T. Joseph Seward (P35095)
                                                       Haider A. Kazim (P66146)
                                                       Karen M. Daley (P60002)
                                                       400 W. Front Street, Ste. 200
                                                       Traverse City, MI 49684
                                                       (231) 922-1888
                                                       tjs@cmda-law.com
                                                       hkazim@cmda-law.com
                                                       kdaley@cmda-law.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the ESTATE OF DANNY
WHITNEY, Deceased,

                                   Case No. 14-cv-00630-PLM

        Plaintiff,                   Hon. Paul L. Maloney

v

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY, DEPUTY
SCOTT MARTIN, SERGEANT ED LASSA,
CORRECTIONAL HEALTHCARE COMPANIES,
INC., HEALTH PROFESSIONALS, LTD, P.C.,
STEPHANIE L. MILLER, LPN and WILFRED P.
SALDANHA, M.D., Jointly and Severally,

        Defendants.

---

| | |
|---|---|
| Ven R.Johnson (P39219) | T. Joseph Seward (P35095) |
| Juliana B. Sabantini (P64367) | Haider A. Kazim (P66146) |
| JOHNSON LAW, PLC | CUMMINGS, McCLOREY, DAVIS |
| Attorneys for Plaintiff | & ACHO, P.L.C. |
| 535 Griswold, Ste. 2632 | Attorneys for County Of Grand Traverse, |
| Detroit, MI 48226 | Sheriff Bensley, Sgt Lassa & Deputy |
| 313.324.8300 | Martin |
| | 400 W. Front Street, Ste. 200 |
| | Traverse City, MI 49684 |
| | 231.922.1888 |
| Randall A. Juip (P58538) | |
| Brian J. Richtarcik (P49390) | |
| FOLEY, BARON, METZGER & JULIP, PLLC | |
| Attorneys for Correctional Healthcare Companies, | |
| Health Professionals, Ltd., P.C., Miller and Saldanha | |
| 38777 Six Mile Road, Ste. 300 | |
| Livonia, MI 48152 | |
| 734.742.1800/734.521.2379 (Fax) | |

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ON BEHALF OF GRAND TRAVERSE COUNTY, SHERIFF BENSLEY, SERGEANT LASSA AND DEPUTY MARTIN

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES ............................................................................... i - vii

QUESTIONS PRESENTED ........................................................................ viii-ix

STATEMENT OF FACTS ................................................................................ 1 - 3

STANDARD OF REVIEW ............................................................................. 3 - 5

LAW AND ARGUMENT ............................................................................... 5 - 6

      I.        **PLAINTIFF CANNOT STATE A CLAIM FOR VIOLATION OF THE DECEDENT'S EIGHTH AMENDMENT RIGHTS** ...................................... 5 – 7

      II.     **PLAINTIFF HAS FAILED TO ALLEGE A VALID CLAIM AGAINST SHERIFF BENSLEY** ............................... 7 – 11

      III.    **DEFENDANTS LASSA AND MARTIN ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY** ..........11 - 16

      IV.    **GRAND TRAVERSE COUNTY CAN ONLY BE HELD LIABLE IF THERE IS A SHOWING OF LIABILITY ON THE PART OF ITS DEPUTIES** ............................11 - 17

      V.     **PLAINTIFF'S STATE LAW CLAIMS AGAINST SHERIFF BENSLEY, SERGEANT LASSA AND DEPUTY MARTIN ARE BARRED BY THE STATUTE OF LIMITATIONS** ..................................................17 – 19

      VI.    **PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY** ........................19 – 25

CONCLUSION .................................................................................. 25

i

## INDEX OF AUTHORITIES

*Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236,
   1240 (6th Cir.1993) ................................................................. 5

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) .................................... 5

*American Transmissions, Inc v. Attorney General*, 454 Mich. 135,
   143-144; 560 N.W.2d 50 (1997) ................................................ 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................... 7, 9

*Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992) ............................ 15

*Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) ............................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 7, 9

*Bukowski v. City of Akron*, 326 F.3d 702, 712-713 (6th Cir. 2003) ................. 16-17

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ................................ 16, 17

*Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) ...................................... 17

*Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir.2002) ................................... 10

*Comstock v. McCray*, 273 F. 3d 693, 702 (6th Cir. 2001) ................................ 11

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) .................................... 4

*County of Lenawee v. Nutten*, 234 Mich. 391; 208 N.W. 613 (1926) ............. 19

*Estate of Gray v. City of Detroit*, 399 F.3d 612, 618 n. 1(6th Cir. 2005) ......... 15

*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ................................................ 12

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ................................................ 11

## CON'T INDEX OF AUTHORITIES

*Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994) ........................ 4

*Graham v Connor*, 490 U.S. at 393 n. 6 ........................................................... 6

*Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) ............................. 11

*Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1990) ........................................ 12

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) .............. 7

*Heller*, 475 U.S. at 799 .................................................................................. 16, 17

*Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994) ........ 12

*Hurst v. Charron*, 267 Mich. 210; 255 N.W. 419 (1934) ............................... 18-19

*Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977) ...................................... 6

*Isabella Co. v. Michigan*, 181 Mich. App. 99, 105; 449
    N.W.2d 111 (1989) .................................................................................... 19

*Jackson v County of Saginaw*, 458 Mich. 141, 148; 580 N.W.2d 870 (1998)  19-20

*Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) .................................... 11

*Johnson v. City of Detroit*, 457 Mich. 695, 702; 579 N.W.2d 895 (1998) ...... 19

*Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993) .............................. 5

*Jones v. Reynolds*, 438 F.3d 685, 698 (6th Cir. 2006) ..................................... 16

*Kentucky v. Graham*, 473 U.S. 159 (1985) ...................................................... 13

*Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007) ................................. 15

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996) .......... 4

iii

## CON'T INDEX OF AUTHORITIES

*May v. Franklin Cty Commrs*, 437 F.3d 579, 586 (6th Cir. 2006) .................... 16

*McQueen v. Beecher Community Schools*, 433 F.3d 460, 471 (6th Cir. 2006)  16

*Meadows v. Detroit*, 164 Mich. App. 418; 418 N.W.2d 100 (1987) .............. 21, 22

*Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005) .................... 10

*Modd v. County of Ottawa*, 1:10-CV-337, 2010 WL 5860425
    (W.D. Mich. Aug. 4, 2010) ........................................................ 6

*Monell v. New York City Dept. of Social Services*, 436
    U.S. 658 (1978) ........................................................ 16

*Moore v. Detroit*, 128 Mich. App. 491, 496-497; 340
    N.W.2d 640 (1983) .................................................... 19

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987) .............. 4

*Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968) ..................................... 18

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d
    1046, 1051 (6th Cir. 2011) ........................................................ 9

*Payton v. Detroit*, 211 Mich. App. 375, 392; 536
    N.W.2d 233 (1995) .................................................... 23

*Perez v. Oakland Cnty.*, 466 F.3d 416, 432 (6th Cir. 2006) ............................ 15

*Petipren v. Jaskowski*, 494 Mich. 190; 833 N.W.2d 247 (2013) .................... 21, 22

*Ramachandran v. Nottolini*, 902 F. Supp. 158, 159 (N.D. Ill. 1995) ............. 13

*Roberts v. City of Troy*, 170 Mich. App. 567, 575; 429
    N.W.2d 206 (1988) .................................................... 19

iv

## CON'T INDEX OF AUTHORITIES

*Ross v. Consumer Powers Co.*, (on rehearing), 420 Mich. 567,
   618; 363 N.W.2d 641 (1984) ................................................................. 20, 22

*Russell v. Dep't of Corrections*, 234 Mich. App. 135, 137;
   592 N.W.2d 125 (1999) ............................................................................. 23

*Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) ...................... 10

*Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) ................................. 17

*Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992) ................................. 15

*Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) ...................... 12

*Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) ..................... 5

*Summers v. Detroit*, 206 Mich. App. 46, 48; 520 N.W.2d
   356 (1994) ................................................................................................. 19

*Turner v. French*, 07-14694, 2008 WL 783757
   (E.D. Mich. Mar. 21, 2008) ....................................................................... 6

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995) ......................................... 12

*Vermilya v. Dunham*, 195 Mich. App. 79; 489 N.W.2d
   496 (1982) ................................................................................................. 24

*Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977) .............................. 13

*Wade v. Dep't of Corrections*, 439 Mich. 158, 163;
   483 N.W.2d 26 (1992) .............................................................................. 20

*Washington v. Starke*, 173 Mich. App. 230; 433 N.W.2d 834 (1988) ............ 22

v

## CON'T INDEX OF AUTHORITIES

*Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ................. 17

*Weeks v. Portage Cty Executive Offices*, 235 F.3d 275,
 279 (6th Cir. 2000) ...................................................................... 17

*West v. Atkins*, 487 U.S. 42, 48 (1988) ........................................................... 5

*Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983) ........................ 4

## RULES:

Fed. R. Civ. P. 7(a) ........................................................................... 4

Fed. R. Civ. P. 8 ............................................................................... 7, 8

Fed. R. Civ. P. 12(b)(6) .................................................................... 4, 7

Fed. R. Civ. P. 12(c) ……………………………………………………3, 4, 7, 25

## STATUTES:

42 U.S.C. § 1993 ……………………………………………………5, 12, 13, 17

MCL 691.1407 ……………………………………………………. 17, 19, 22, 23

MCL 600.5805(1) ........................................................................... 18

MCL 600.5805(7) ........................................................................... 18

M.C.L. § 691.1401 ........................................................................ 20

M.C.L. 691.1407(5) ....................................................................... 21

**MISC:**

Black's Law Dictionary, 6th Ed. 1990 ............................................................ 24

Due Process Clause of the Fourteenth Amendment ......................................... 6-7

Eighth Amendment ............................................................................................ 6

<u>**QUESTIONS PRESENTED**</u>

**I.    SHOULD PLAINTIFF'S CLAIMS FOR VIOLATION OF
THE EIGHT AMENDMENT BE DISMISSED?**

Defendants Grand Traverse County, Sheriff Bensley, Sergeant
Lassa and Deputy Martin say: "Yes."

**II.   HAS PLAINTIFF FAILED TO ALLEGE A VALID CLAIM
AGAINST SHERIFF BENSLEY?**

Defendants Grand Traverse County, Sheriff Bensley,
Sergeant Lassa and Deputy Martin say: "Yes."

**III.  ARE DEFENDANTS LASSA AND MARTIN ENTITLED TO
THE DEFENSE OF QUALIFIED IMMUNITY?**

Defendants Grand Traverse County, Sheriff Bensley, Sergeant
Lassa and Deputy Martin say: "Yes."

**IV.   SHOULD GRAND TRAVERSE COUNTY BE DISMISSED
WHERE THERE IS NO SHOWING OF LIABILITY ON THE
PART OF ITS DEPUTIES?**

Defendants Grand Traverse County, Sheriff Bensley,
Sergeant Lassa and Deputy Martin say: "Yes."

**V.    ARE PLAINTIFF'S STATE LAW CLAIMS AGAINST
SHERIFF BENSLEY, SERGEANT LASSA AND
DEPUTY MARTIN BARRED BY THE STATUTE OF
LIMITATIONS?**

Defendants Grand Traverse County, Sheriff Bensley,
Sergeant Lassa and Deputy Martin say: "Yes."

viii

## <u>CON'T QUESTIONS PRESENTED</u>

**VI.    SHOULD PLAINTIFF'S STATE LAW CLAIMS BE DISMISSED WHERE DEFENDANTS ARE ENTITLEDTO GOVERNMENTAL IMMUNITY?**

Defendants Grand Traverse County, Sheriff Bensley, Sergeant Lassa and Deputy Martin say "Yes."

## STATEMENT OF FACTS

This case arises out of the death of Danny Whitney while being held at the Grand Traverse County Correctional Facility on a probation violation. (Complaint, attached as **Ex. 1**). Plaintiff alleges that on March 2, 2011,[1] at approximately 3:50 p.m., Mr. Whitney tested positive for drugs in district court probation. (**Ex. 1**, ¶ 19). When Lassa arrived to district court probation to arrest him, Lassa noted Whitney appeared groggy. (**Ex. 1**, ¶ 19). Whitney was questioned by Lassa regarding his drug use, to which Whitney indicated he had taken four methadone pills and one Xanax pill. (**Ex. 1**, ¶ 20). As a result, Lassa contacted the house where Whitney was staying to check his prescription bottles. (**Ex. 1**, ¶ 21). It is alleged that a discrepancy was reported to Lassa as to when the prescription was filled and how many pills were in the bottles, and thus there was no determination made as to the amount of methadone ingested by Whitney. (**Ex. 1**, ¶ 21).

Mr. Whitney was then brought to the Grand Traverse County Correctional Facility (GTCF) by Deputy Lassa, whereupon it is alleged that Lassa conducted a body cavity search of Whitney due to the discrepancy of his medications and being

---

[1] In the Complaint, Plaintiff lists the date of the incident as March 2, 2011; the correct date of the incident is March 2, 2012.

1

under the influence of drugs. Nothing was found. (**Ex. 1**, ¶ 22). Whitney was then placed on a bench in the booking area to await booking.

At approximately 5:35 p.m., Deputy Martin took Mr. Whitney's vitals which were noted as blood pressure of 94/54, oxygen saturation of 83%, pulse of 67.  (**Ex. 1**, ¶ 25). It is alleged that Martin then completed a Jail Medical/Mental/Questionnaire, which affirmatively confirmed Whitney's drug and alcohol use. (**Ex. 1**, ¶ 26).

Plaintiff alleges that at approximately 5:45 p.m., Deputy Martin entered the medical office and informed Stephanie Miller, LPN that Mr. Whitney appeared to be under the influence of something and reported his pulse ox as 83%. (**Ex. 1**, ¶ 28). Thereafter, Ms. Miller took Whitney's vitals and gave him a glass of water; noting that he appeared drowsy and his speech was slurred. (**Ex. 1**, ¶ 29).

It is alleged that sometime after 6 p.m., Miller advised Deputy Martin to place Mr. Whitney in a cell in the intake area for observation. (**Ex. 1**, ¶ 31). Mr. Whitney was placed in an observation cell, and it was noted that he was snoring very loudly. (**Ex. 1**, ¶ 31). At approximately 8:45 p.m.. Miller informed Martin that Dr. Wifred Saldanha had been consulted regarding Whitney's condition and advised to let him continue to sleep. (**Ex. 1**, ¶ 33).

Plaintiff claims that at approximately 11:00 p.m., corrections officers found Mr. Whitney to be unresponsive with "foamy froth from his mouth, vomit in the

area, cape cyanosis, and arm discoloration." (**Ex. 1**, ¶ 39). Whitney was pronounced dead. (**Ex. 1**, ¶ 39). The autopsy report concluded Whitney's death was a result of acute methadone toxicity. (**Ex. 1**, ¶ 40).

On June 11, 2014, Brenda Strait, as Personal Representative of the Estate of Danny Whitney, filed the present Complaint against County of Grand Traverse, Sheriff Thomas Bensley, Deputy Scott Martin, Sergeant Ed Lassa, Correctional Healthcare Companies, Inc. (CHC), Health Professionals, Ltd., P.C. (HPL), Stephanie L. Miller, L.P.N., and Wilfred P. Saldanha, M.D. Plaintiff has alleged: Count I – a § 1983 claim against all Defendants for the denial of medical treatment for serious medical needs; Count II – a § 1983 claim against Grand Traverse County, Sheriff Bensley, CHC and HPL for failure to train, inadequate policies and/or procedures, customs and practices and failure to supervise; and Count III – gross negligence, intentional, willful and wanton conduct against all Defendants; Count IV – medical malpractice against CHC, HPL and Miller; and Count V – medical malpractice against CHC, HPL and Dr. Saldanha. (**Ex. 1**).

## STANDARD OF REVIEW

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Pleadings are considered "closed" once the once a complaint and answer have been

filed. Fed. R. Civ. P. 7(a).   Here, the Complaint was filed on June 11, 2014, and Defendants' Answer was filed on July 15, 2014.

Where the Rule 12(c) motion is based on the argument that the complaint fails to state claim upon which relief may be granted, it is judged under the same standard of review as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987) (finding "[w]here the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's decision.").

In considering a Rule 12(b)(6) motion to dismiss, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). A complaint should be dismissed under Rule 12(b)(6) where "it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Conley*, 355 U.S. at 45-46. While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994).

4

This standard of review requires more than the bare assertion of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.*

## LAW AND ARGUMENT

### I.   PLAINTIFF CANNOT STATE A CLAIM FOR VIOLATION OF THE DECEDENT'S EIGHTH AMENDMENT RIGHTS.

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

Plaintiffs have alleged that Defendants' actions were in violation of the decedent's Eighth Amendment right to be free from cruel and unusual punishment. (**Ex. 1**, ¶¶ 12, 49-50). However, the Eighth Amendment's prohibition against cruel and unusual punishment is applicable only to those convicted of crimes. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977).

Although the decedent was arrested for violating the conditions of his probation for a prior conviction, he had not been convicted and sentenced based on the probation violation. Therefore, Defendants had not yet acquired the power to punish the decedent for that violation. As a result, Plaintiff was not entitled to the protection of the Eighth Amendment at the time of Defendants' alleged conduct. See *Graham*, 490 U.S. at 393 n. 6 (noting that the Eighth Amendment's protections do not attach until after conviction and sentencing). See also *Turner v. French*, 07-14694, 2008 WL 783757 (E.D. Mich. Mar. 21, 2008) (determining Eighth Amendment did not apply where plaintiff had not yet been convicted and sentenced for probation violation) (attached as **Ex. 2**); *Modd v. County of Ottawa*, 1:10-CV-337, 2010 WL 5860425 (W.D. Mich. Aug. 4, 2010) (determining that, as a pretrial detainee awaiting adjudication of probation violation charges, plaintiff's substantive

6

right to adequate medical care was guaranteed by the Due Process Clause of the Fourteenth Amendment) (attached as **Ex. 3**). As such, Plaintiff cannot state a claim for violation of the decedent's Eighth Amendment rights.

## II.    PLAINTIFF HAS FAILED TO ALLEGE A VALID CLAIM AGAINST SHERIFF BENSLEY.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and its companion case, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court raised the bar for the pleading standards that a plaintiff must satisfy to survive a motion to dismiss. Although *Twombly* and *Iqbal* both pertained to Rule 12(b)(6) motions, the pleading standards articulated therein apply with equal force where, as here, the motion is based upon Rule 12(c). See, e.g., *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

In order to sufficiently provide the grounds for entitlement to relief, a complaint demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. It demands more than "labels and conclusions. . . ." *Twombly*, 550 U.S. at 555. It demands more than "a formulaic recitation of the elements of a cause of action. . . ." *Id.* Finally, it demands more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation

7

omitted). To survive a motion to dismiss, a complaint must cross the line of possibility and enter the realm of plausibility. As the Supreme Court explained in *Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision. . . . First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged C but it has not shown C that the pleader is entitled to relief.

*Id.* at 678-79 (internal citations, quotations, and alterations omitted).

When a complaint is deficient under Rule 8, the plaintiff "is not entitled to discovery, cabined or otherwise." *Id.* at 686. This remains true "even when the

information needed to establish a claim . . . is solely within the purview of the

defendant or a third party. . . ." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,

650 F.3d 1046, 1051 (6th Cir. 2011). Thus, discovery cannot serve as the means to

obtain the facts required in a complaint:

> By foreclosing discovery to obtain [factual] information, the combined effect of *Twombly* and *Iqbal* require [the] plaintiff to have greater knowledge . . . of factual details in order to draft a 'plausible complaint'. . . . The plaintiff may not use the discovery process to obtain these facts after filing suit. The language of *Iqbal*, 'not entitled to discovery,' is binding on the lower federal courts.
>
> *   *   *
>
> Without discovery, the plaintiff may have no way to find out the facts in the hands of competitors, but *Iqbal* specifically orders courts . . . to refuse to order further discovery.

*Id.* at 1051, 1053.

In the complaint, Plaintiff fails to plead facts alleging that Sheriff Bensley –

who serves in his supervisory capacity – was personally involved in the events

underlying the suit in order to state plausible claims for relief. These claims cannot

be salvaged under a theory of respondeat superior because under section 1983

"[g]overnment officials may not be held liable for the unconstitutional conduct of

their subordinates." *Iqbal*, 129 S.Ct. at 1948. Rather, "a plaintiff must plead that each

Government-official defendant, through the official's own *individual actions*, has

violated the Constitution." *Id.* (emphasis added). In other words, Bensley cannot be

vicariously liable for the actions of the deputies; instead, to state a valid claim for

9

relief, Plaintiff must allege that Bensley was personally involved in the alleged unconstitutional conduct. See *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005). Moreover, "[s]upervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir.2002). See also *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998).

Plaintiff has failed to adequately satisfy these pleading requirements. With regard to Sheriff Bensley, Plaintiff merely asserts that he was the Sheriff and "policy maker," and that he "had the charge and custody of the Grand Traverse County Correctional Facility and formulated and oversaw policies, practices, regulations, protocols, and customs therein and had the authority for hiring, screening, training, supervising, and disciplining of deputies, corrections officers and medical staff." (**Ex. 1**, ¶¶ 3-4). Specifically in Count I, Plaintiff merely asserts the claims against "all Defendants" and alleges that "[e]ach and every one of the defendants violated Danny's civil rights . . . ." (**Ex. 1**, ¶¶ 47-53). Again in Count II, Plaintiff only asserts that "County, Bensley, CHC and/or HPL owed Danny certain duties" and that these Defendants "breached these duties via their policies, procedures, regulations customs and/or lack of training . . . ." (**Ex. 1**, ¶¶ 54-57).

Plaintiff has failed to allege any personal involvement of Sheriff Bensley. Instead, Plaintiff argues that this Defendant should be liable in a supervisory

capacity. However, Plaintiff has failed to allege any facts showing that Sheriff Bensley either encouraged or even participated in the alleged acts of misconduct. Plaintiff's allegations of liability against this Defendant are based only on the Sheriff's alleged failure to act, which is insufficient. Consequently, Plaintiff's constitutional claims against Sheriff Bensley should be dismissed.

## III.   DEFENDANTS LASSA AND MARTIN ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY.

Plaintiff alleges that Defendants Lassa and Martin were deliberately indifferent to the decedent's serious medical needs when they failed to provide him with adequate medical care. The Fourteenth Amendment gives pre-trial detainees a right to adequate medical treatment that is analogous to that of prisoners under the Eighth Amendment. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). A constitutional claim for inadequate medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *Comstock v. McCray*, 273 F. 3d 693, 702 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. 511 U.S. at 834. The subjective component requires a plaintiff to show that officials have "a sufficiently culpable state of mind in denying medical care," which is normally defined as "deliberate indifference." *Id.*

11

Deliberate indifference is a very high standard – a showing of simple negligence or even heightened negligence is not sufficient. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1990). The conduct for which liability attaches must demonstrate deliberateness equivalent to an intent to punish. *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)); *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Therefore, in the present case, the Plaintiff must allege and establish that he had a serious medical need, Defendants were actually aware of this need, and Defendants acted with deliberate indifference to his medical condition.

As stated above, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995) (where complaint failed to allege wrongdoing by a particular defendant, it fell "far short of the standard that is necessary to weed out meritless actions"). It is not the obligation of the court to dissect Plaintiff's complaint to speculate who he believes committed certain actions. Rather, it is Plaintiff who is in the best position to plead these facts, if these facts do exist. *Veney*, 70 F.3d at 922.

This Court should dismiss Plaintiff's § 1983 claims because Plaintiff fails to identify which of the Defendants allegedly violated the decedent's constitutional rights. Plaintiff contends that his claims against Lassa and Martin are constitutional claims brought under § 1983 against these Defendants in their individual capacities.

12

In a § 1983 personal or individual capacity suit, a plaintiff must show that the official charged personally caused the deprivation of his federal rights. *Kentucky v. Graham*, 473 U.S. 159 (1985) (requires a showing that the official personally caused the deprivation) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977) (must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights"); *Ramachandran v. Nottolini*, 902 F. Supp. 158, 159 (N.D. Ill. 1995) (to show individual liability under § 1983, plaintiff must show individual "personally participated in the alleged constitutional deprivation" (citing *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985)). Nothing in the Complaint supports a claim of deliberate indifference personally attributable to either Lassa or Martin.

On the facts as alleged, there is nothing to suggest that Defendants Lassa and Martin acted with the requisite intent to support a claim of deliberate indifference. Sergeant Lassa was the arresting officer. (**Ex. 1**, ¶ 19). At the time of the arrest, Lassa noted that Mr. Whitney was groggy, so he questioned him about his drug use. (**Ex. 1**, ¶ 20). Once Mr. Whitney indicated that he had taken four methadone pills and one Xanax pill, Lassa contacted the house where Whitney was staying to check his prescription bottles. (**Ex. 1**, ¶ 21). Because there was a discrepancy in when his prescriptions were filled and how many pills were in the bottles, Sgt. Lassa transported Mr. Whitney to the Grand Traverse Correctional Facility and then

13

conducted a body cavity search. (**Ex. 1**, ¶ 23). These are the only specific allegations pertaining to Sgt. Lassa.

Plaintiff alleges Deputy Martin first encountered Mr. Whitney at 5:35 p.m., when Martin took Whitney's vitals. (**Ex. 1**, ¶ 25). Deputy Martin immediately completed a Jail Medical/Mental Questionnaire. (**Ex. 1**, ¶ 26). Based upon Mr. Whitney's vitals and the completed Jail Medical/Mental Questionnaire, Deputy Martin went to the medical office and told Stephanie Miller, a licensed practical nurse, that Mr. Whitney appeared to be under the influence of something. (**Ex. 1**, ¶ 28). He also reported Mr. Whitney's pulse ox of 83% to Ms. Miller. (**Ex. 1**, ¶ 28). Ms. Miller advised Deputy Martin to place Mr. Whitney in a cell for observation, which he did. (**Ex. 1**, ¶ 31). Mr. Whitney was noted to be snoring very loudly. Thereafter, at approximately 8:45 p.m., Ms. Miller informed Deputy Martin that Dr. Wilfred Saldanha had been consulted regarding Mr. Whitney's condition, and he advised them to let Whitney continue to sleep. (**Ex. 1**, ¶ 33). There are no further allegations specific to Deputy Martin.

None of the conduct attributable to either Sgt. Lassa or Deputy Martin is the equivalent of an intent to punish. To the contrary, Sgt. Lassa took steps to discover what type and how many pills Mr. Whitney had taken, and even conducted a body cavity search to make sure he was not hiding additional pills. Deputy Martin checked Mr. Whitney's vitals, and made sure a medical/mental questionnaire was completed.

14

He then informed the nurse of the results and of his concern that Mr. Whitney may have been on something. From then on, he merely followed the instructions and advice provided by the licensed medical professionals who were in a better position to diagnose and treat Mr. Whitney. Such circumstances are insufficient to support a claim for deliberate indifference. Accordingly, Defendants Lassa and Martin are entitled to the defense of qualified immunity.

Plaintiff asserts that Lassa and Martin failed to follow the County's own policies and procedures regarding the performance of rounds and/or observation at the jail. (**Ex. 1**, ¶ 37). Notably, this claim is substantially undercut by her contention that the decedent's rights were violated by: "County, CHC and/or HPL's failure to have proper policies and procedures . . . to deal with inmates in the observation cell . . . ." (**Ex. 1**, ¶ 56(c)); see *Perez v. Oakland Cnty.*, 466 F.3d 416, 432 (6th Cir. 2006) (finding that the plaintiff's argument that jail staff's failure to follow established County policy resulted in a constitutional violation undercut his argument that the County's policies were the cause of the violation).

Furthermore, the failure to follow internal policies does not amount to a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007); *Estate of Gray v. City of Detroit*, 399 F.3d 612, 618 n. 1(6th Cir. 2005); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Therefore, Plaintiff's allegations that Lassa and Martin

15

failed to follow the County's internal jail policies is insufficient to establish a constitutional violation.

## IV.  GRAND TRAVERSE COUNTY CAN ONLY BE HELD LIABLE IF THERE IS A SHOWING OF LIABILITY ON THE PART OF ITS DEPUTIES.

A determination that neither Sgt. Lassa nor Deputy Martin violated the decedent's constitutional rights resolves the claim against the County as well.  See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (determining that "neither *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original). See also *Jones v. Reynolds*, 438 F.3d 685, 698 (6th Cir. 2006) (a determination that the City's officials did not violate the plaintiff's constitutional rights resolves the claim against the City as well); *McQueen v. Beecher Community Schools*, 433 F.3d 460, 471 (6th Cir. 2006) (same); *May v. Franklin Cty Commrs*, 437 F.3d 579, 586 (6th Cir. 2006) (where plaintiff cannot show employees violated constitutional rights, municipality not liable for failure to train); *Bukowski v. City of*

16

*Akron*, 326 F.3d 702, 712-713 (6th Cir. 2003) (holding that the claim against the city resolved with the determination that the city's officials did not violate the plaintiff's constitutional rights); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001); *Weeks v. Portage Cty Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000) (no liability as a matter of law on municipality for failure to provide adequate training where no violation of rights by officers); *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) (noting that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well"); *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) (same).

Consequently, if no constitutional violation by Lassa or Martin has been established, Grand Traverse County cannot be held liable under § 1983. *Heller*, 475 U.S. at 799. Because there is no deprivation of constitutional rights in the present case, there is no basis for liability under § 1983, municipal or otherwise. Accordingly, summary judgment in favor of Grand Traverse County is appropriate.

## V. PLAINTIFF'S STATE LAW CLAIMS AGAINST SHERIFF BENSLEY, SERGEANT LASSA AND DEPUTY MARTIN ARE BARRED BY THE STATUTE OF LIMITATIONS.

In Count III of the Complaint, Plaintiff alleges a claim of "gross negligence, intentional, willful and wanton conduct" against all Defendants. Plaintiff relies on MCL 691.1407(2)(c) in support of her claim.

17

Michigan law pertaining to the statute of limitations associated with claims and causes of action against law enforcement officers arising out of their alleged misconduct is unequivocal. The statute of limitations for any claim against an officer is two years. See MCL 600.5805(7). MCL 600.5805(1) provides as follows:

> A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

MCL 600.5805(7) provides:

> The period of limitations is 2 years for an action against a sheriff charging misconduct or neglect of office by the sheriff or the sheriff's deputies.

This statute of limitations period has been applied to claims involving all types of law enforcement officers, not just sheriffs. For instance, in *Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968), the Court applied Michigan's two-year statute of limitations for misconduct of sheriffs and their deputies to an action against a detective, a sergeant and a lieutenant.

Plaintiff's Complaint arises out of an incident that occurred on March 2, 2012. Therefore, the deadline for filing state law claims against the Sheriff and Sheriff Deputies involved in this matter was March 2, 2014. Since Plaintiff's Complaint was not filed until June 11, 2014, Plaintiff's state law claims against the Sheriff, Sgt. Lassa and Deputy Martin are barred by the statute of limitations.  See *Hurst v.*

18

*Charron*, 267 Mich. 210; 255 N.W. 419 (1934); *County of Lenawee v. Nutten*, 234 Mich. 391; 208 N.W. 613 (1926).

## VI. PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY.

### A. The claims against the County are barred by the application of governmental immunity.

The governmental immunity statute, M.C.L. § 691.1407, provides: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." M.C.L. 691.1407(1). See also *Johnson v. City of Detroit*, 457 Mich. 695, 702; 579 N.W.2d 895 (1998). It is well settled that tort actions against a municipality based on the negligence of its law enforcement officers, occurring while the officer is engaged in a discharge of that function, are barred by the doctrine of governmental immunity. *Isabella Co. v. Michigan*, 181 Mich. App. 99, 105; 449 N.W.2d 111 (1989); *Roberts v. City of Troy*, 170 Mich. App. 567, 575; 429 N.W.2d 206 (1988); *Moore v. Detroit*, 128 Mich. App. 491, 496-497; 340 N.W.2d 640 (1983).

Defendant Grand Traverse County is a municipal corporation entitled to the protection of the statute. *Summers v. Detroit*, 206 Mich. App. 46, 48; 520 N.W.2d 356 (1994). The operation and maintenance of a jail constitutes a governmental function for which a governmental agency is generally immune from suit. *Jackson*

*v County of Saginaw*, 458 Mich. 141, 148; 580 N.W.2d 870 (1998). Plaintiff alleges that Defendants were acting within the scope of their employment at all times pertinent to Plaintiff's Complaint. Accordingly, Plaintiff's state law claims against Livingston County are barred by the doctrine of governmental immunity.

**B.**   **Plaintiff has failed to allege an exception to Defendant's governmental immunity.**

In order to survive a motion to dismiss based upon governmental immunity, the Plaintiff must establish that its claim fits within a recognized exception to governmental immunity. *Wade v. Dep't of Corrections*, 439 Mich. 158, 163; 483 N.W.2d 26 (1992). There are five statutory exceptions to governmental immunity, which include: the failure to maintain highways, the negligent operation of government-owned vehicles, public building defects, the performance of proprietary functions, and the ownership or operation of a governmental hospital.  See M.C.L. § 691.1401 *et seq*. These exceptions are "narrowly drawn" and are to be narrowly construed. *Ross v. Consumer Powers Co.*, (on rehearing), 420 Mich. 567, 618; 363 N.W.2d 641 (1984).

In order to overcome Defendant's assertion of entitlement to governmental immunity, Plaintiff must plead and prove one of the above-referenced exceptions to governmental immunity. *Wade, supra*. In the present case, Plaintiff has failed to allege that any of the recognized exceptions are applicable. Since Plaintiff's claims

20

fail to fall within any of the recognized exceptions to a governmental agency's entitlement to immunity, his state law claims against Grand Traverse County should be dismissed.

C.    **As the highest elected official of the Grand Traverse County Sheriff's Department, Sheriff Bensley is entitled to absolute immunity from tort liability.**

The governmental immunity act provides that the highest elected or appointed executive officials of all levels of government are absolutely immune from tort liability. M.C.L. 691.1407(5). This absolute immunity applies to governmental officials while acting within their respective executive authority.    *American Transmissions, Inc v. Attorney General*, 454 Mich. 135, 143-144; 560 N.W.2d 50 (1997). A government official's motive need not be considered when determining whether an official was acting within the scope of his "executive authority." *Id.*

This absolute immunity has been applied to actions of chiefs of police for acts committed in the exercise of their executive authority. *Petipren v. Jaskowski*, 494 Mich. 190; 833 N.W.2d 247 (2013); *Meadows v. Detroit*, 164 Mich. App. 418; 418 N.W.2d 100 (1987). In *Petipren*, an arrestee brought an action against a village police chief alleging that the chief assaulted him without provocation and wrongfully arrested him for resisting and obstructing and disorderly conduct. The Michigan Supreme Court held that a chief, as the highest appointed executive official, is entitled to absolute immunity under M.C.L. 691.1407(5) even when performing the

21

acts of a lower-level employee if those actions are within the authority vested in the official by virtue of his or her role as an executive official. Because the power to arrest "unquestionably falls within the scope" of the chief of police, the Court held that the chief was entitled to absolutely immunity as a matter of law. *Petipren*, 494 Mich. at 216.

Furthermore, in *Washington v. Starke*, 173 Mich. App. 230; 433 N.W.2d 834 (1988), the Court held that the director of public safety of City of Benton Harbor, Sam Watson, was entitled to absolute immunity from tort liability:

> Sam Watson was the highest executive official in Benton Harbor's Police Department. Our Supreme Court has held that the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their executive authority. *Ross, supra*, p. 592. This absolute immunity has been applied to the actions of Chiefs of Police for acts committed in the exercise of their executive authority. *Meadows* [*supra*]. Watson's supervision of departmental employees is conduct within his executive authority and therefore immune from suit.

173 Mich. App. at 241.

Plaintiff seeks to hold the Sheriff Bensley liable in his supervisory capacity. The Sheriff's supervision of officers in the Sheriff's Department is unquestionably within his executive authority. Therefore, as the highest executive official of the Sheriff's Department, he is entitled to absolute immunity from tort liability pursuant to M.C.L. 691.1407(5).

22

**D.     Governmental immunity bars Plaintiff's state tort claims against Defendants Lassa and Martin.**

Under Michigan law, law enforcement officers who allegedly causes an injury during the course of their employment are immune from tort liability if they were acting or reasonably believed they were acting within the scope of their authority, their agency was engaged in a governmental function, and they were not grossly negligent. M.C.L. § 691.1407(2).

In the present case, Defendants were engaged in the detention of Plaintiff, which is a quintessential governmental function. *Payton v. Detroit*, 211 Mich. App. 375, 392; 536 N.W.2d 233 (1995). The Michigan Court of Appeals has stated that there "are few functions more clearly governmental in nature than the arrest, detention, and prosecution, of persons suspected of having committed a crime, and the decisions involved in determining which suspects should be prosecuted and which should be released." *Id.* at 392.   Furthermore, governmental immunity embraces all activities that are incidents of operating a jail. See generally *Russell v. Dep't of Corrections*, 234 Mich. App. 135, 137; 592 N.W.2d 125 (1999).  Because Plaintiff is alleging tort liability arising from his incarceration, Defendants were clearly engaged in a governmental function.

The third element, existence or non-existence of gross negligence, is a determination that can be made as a matter of law if the Court finds that reasonable

23

minds could not differ as to whether the conduct of the Defendants constituted gross negligence. See *Vermilya v. Dunham*, 195 Mich. App. 79; 489 N.W.2d 496 (1982). As employees of Grand Traverse County, Defendants are entitled to immunity from tort liability unless Plaintiff can establish that their conduct amounted to "gross negligence," i.e. conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. "Reckless" is defined as:

> The state of mind accompanying an act, which either pays no regard to its probability or possibly injurious consequences, or which, through foreseeing such consequences, persists in spite of such knowledge. **Recklessness is a stronger term than mere ordinary negligence and to be reckless, the conduct must be such as to evidence disregard of or indifference to consequences, under circumstances involving danger to life or safety to others . . .**

Black's Law Dictionary, 6th Ed. 1990.  (Emphasis added).

In the present case, there are no allegations of any conduct that could support a finding that Defendant Lassa or Martin were grossly negligent as defined by the statute. Plaintiff asserts that all of the Defendants were grossly negligence because they failed to evaluate and provide Mr. Whitney with immediate medical care. However, the factual allegations in the Complaint do not support such a contention with regard to Defendants Lassa and Martin. Sgt. Lassa questioned Mr. Whitney about his drug use, and then followed up by investigating his prescriptions and conducting a body cavity search to ensure he was not in possession of any additional pills. Deputy Martin took Mr. Whitney's vitals, informed the jail nurse of Whitney's

24

condition, and then placed him in an observation cell to sleep at the direction of a licensed nurse and medical doctor.  Plaintiff has failed to allege any specific acts of these Defendants that could support a claim of gross negligence. Accordingly, Defendants Lassa and Martin are entitled to governmental immunity to bar Plaintiff's tort claims.

## CONCLUSION

For the foregoing reasons, the Defendants, COUNTY OF GRAND TRAVERSE, SHERIFF BENSLEY, SERGEANT LASSA AND DEPUTY MARTIN, respectfully request that this Honorable Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c), thereby dismissing the Complaint against these Defendants in its entirety.

Dated:  August 19, 2014
CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.

 /s/ T. Joseph Seward
T. Joseph Seward (P35095)
Haider A. Kazim (P66146)
Attorneys for Defs. COUNTY OF
GRAND TRAVERSE, SHERIFF
BENSLEY, SGT. LASSA
and DEPUTY MARTIN
400 W. Front Street, Ste. 200
Traverse City, MI 49684
(231) 922-1888
tjseward@cmda-law.com
hkazim@cmda-law.com

25