# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the Estate of Danny
Whitney, Deceased,

        Plaintiff,

v.

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY,
DEPUTY SCOTT MARTIN,
SERGEANT ED LASSA, CORRECTIONAL
HEALTHCARE COMPANIES, INC.,
HEALTH PROFESSIONALS, LTD, P.C.,
STEPHANIE L. MILLER, LPN, and
WILFRED P. SALDANHA, MD,
Jointly and Severally,

        Defendants.

Case No.  14-cv-00630
Hon. Paul  L. Maloney

> **PLAINTIFFS' RESPONSE
> TO THE MOTION TO
> DISMISS ON BEHALF OF
> MOTION TO DISMISS ON
> BEHALF OF GRAND
> TRAVERSE COUNTY,
> SHERIFF BENSLEY,
> SERGEANT LASSA AND
> DEPUTY MARTIN**

---

**VEN R. JOHNSON (P39219)**
**JULIANA B. SABATINI (P64367)**
JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold, Suite 2632
Detroit, Michigan 48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
jsabatini@venjohnsonlaw.com

**T. JOSEPH SEWARD (P35095)**
**HAIDER A. KAZIM (P66146)**
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendants COUNTY OF GRAND
TRAVERSE, SHERIFF BENSLEY,
DEPUTY MARTIN and SGT. LASSA
400 W. Front Street, Ste. 200
Traverse City, MI 49684
(231) 922-1888
tjseward@cmda-law.com
hkazim@cmda-law.com

**RANDALL A. JUIP (P58538)**
**BRIAN J. RICHTARCIK (P49390)**
FOLEY, BARON, METZGER & JUIP, PLLC
Attorney for Defendants, Correctional
Healthcare Companies, Inc., Health
Professionals, Ltd, P.C., Stephanie L.
Miller, LPN and Wilfred P. Saldanha, M.D.
38777 Six Mile Road, Suite 300
Livonia, MI 48152
(734) 742-1800 / Fax (734) 521-2379
rajuip@fbmjlaw.com
brichtarcik@fbmjlaw.com

---

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS ON BEHALF OF MOTION TO DISMISS ON BEHALF OF GRAND TRAVERSE COUNTY, SHERIFF BENSLEY, SERGEANT LASSA ANDDEPUTY MARTIN**

NOW COMES PLAINTIFF BRENDA STRAIT, as Personal Representative of the Estate of Danny Whitney, Deceased, through her counsel, Johnson Law, PLC, and in response to the Motion to Dismiss filed by defendants GRAND TRAVERSE COUNTY, SHERIFF BENSLEY, SERGEANT LASSA AND DEPUTY MARTIN, states as follows:

1. Admit.

2. Admit.

3. Admit, while noting that much of defendants' motion is dependent on making factual determinations that cannot be made prior to discovery.

4. Admit.

5. Plaintiff admits that defendant is permitted to file this motion from a procedural standpoint, but again note that many of defendants' arguments are not proper in the context of a motion to dismiss.

6. Admit.

7. Plaintiff admits that Count I of the Complaint alleged that the Eight *and* Fourteenth Amendments were implicated by defendants' conduct.

8. Plaintiff generally admits the allegation, while noting that defendants admit in their brief that the Fourteenth Amendment applies to pretrial detainees and provides those individuals the same rights that a convicted citizen has under the Eight Amendment.

9. Plaintiff neither admits nor denies what Danny Whitney's exact legal status was at the time of his death and notes that no discovery has occurred in this case as of this writing.

2

10. Neither admit nor deny, while noting that the viability of Count I is not dependent on the applicability of the Eight Amendment.

11. Deny.  Plaintiff specifically pled that Sheriff Bensley is the final policymaker for this correctional facility and that his failure in that role was the driving force behind Danny's death.

12. Plaintiff admits that government officials cannot be held vicariously liable while again noting that the claims presented against Sheriff Bensley are not premised on vicarious liability but instead allege direct unconstitutional actions.

13. Deny.

14. Deny.

15. Deny.  The applicability of qualified immunity is a fact dependent question that cannot be answered at this point in this litigation.  What can be stated is that Plaintiff's Complaint adequately alleges facts that, when accepted, demonstrate that Lassa and Martin are no entitled to immunity.

16. Admit.  Lassa and Martin failed to ensure that Danny was provided with necessary medical care and failed to properly monitor him in his cell.

17. Neither admit nor deny that deliberate indifference presents a "very high standard" as that is a term without clear legal meaning.

18. Neither admit nor deny, while maintaining that Plaintiff specifically pled that there was a causal connection between the failure to follow certain policies and Danny's death.

19. Denied.

20. Denied.  The determination of defendants' specific mindsets and intents are issues that cannot be determined until this factual record is developed.

21. Denied.

22. Denied, while further reiterating that defendants cannot show that Lassa and Martin are not liable until discovery has been completed, if at all.

23. Denied.

24. Denied.  The identified statute of limitations does not control this matter, as this action arises out of Danny Whitney's death.  Consequently, the calculation of the statute of limitations depends on the date that the estate's letters of authority issued.

25. Denied.

26. Denied.  Defendants have presented no authority that states that a Sheriff is entitled to absolute immunity.  Defendants have, however, cited statutory authority regarding the statute of limitations that applies to actions against a Sheriff.  Such a statute would be wholly unnecessary if Sheriffs are absolutely immune.

27. Denied.  Defendant admits that Lassa and Martin can be held liable for gross negligence and that Plaintiff pled that those individuals were grossly negligent. Defendants nonetheless invite this Court to not only decide a purely factual question, but to do so before any discovery has occurred.  Like much of defendants' motion, the portion regarding the state law claims against Lassa and Martin is grossly premature.

28. Plaintiff admits that defendants sought concurrence in this motion and further admits that Plaintiff does not concur with the sought relief for the reasons stated above and in the brief in support of this response.

WHEREFORE, for the reasons stated above and more fully set forth in the brief in support of her response, Plaintiff respectfully requests that this Honorable Court deny defendants' motion in all regards.

Respectfully submitted,

**JOHNSON LAW, PLC**

By:     /s/ Ven R. Johnson_____
JULIANA B. SABATINI (P64367)
VEN R. JOHNSON (P39219)
Attorneys for Plaintiff
Buhl Building
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324-8300

Dated: October 13, 2014

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

BRENDA STRAIT, as Personal
Representative of the Estate of Danny
Whitney, Deceased,

|  |  |
|---|---|
| Plaintiff, | Case No.  14-cv-00630 |
| | Hon. Paul  L. Maloney |

v.

COUNTY OF GRAND TRAVERSE,
SHERIFF THOMAS BENSLEY,
DEPUTY SCOTT MARTIN,
SERGEANT ED LASSA, CORRECTIONAL
HEALTHCARE COMPANIES, INC.,
HEALTH PROFESSIONALS, LTD, P.C.,
STEPHANIE L. MILLER, LPN, and
WILFRED P. SALDANHA, MD,
Jointly and Severally,

Defendants.

> **BRIEF IN SUPPORT OF
> PLAINTIFFS' RESPONSE TO
> THE MOTION TO DISMISS
> ON BEHALF OF MOTION TO
> DISMISS ON BEHALF OF
> GRAND TRAVERSE
> COUNTY, SHERIFF
> BENSLEY, SERGEANT
> LASSA AND DEPUTY
> MARTIN**

---

VEN R. JOHNSON (P39219)
JULIANA B. SABATINI (P64367)
JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold, Suite 2632
Detroit, Michigan 48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
jsabatini@venjohnsonlaw.com


T. JOSEPH SEWARD (P35095)
HAIDER A. KAZIM (P66146)
CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
Attorneys for Defendants County of Grand
Traverse, Sheriff Bensley,
Deputy Martin and Sgt. Lassa
400 W. Front Street, Ste. 200
Traverse City, MI 49684
(231) 922-1888
tjseward@cmda-law.com
hkazim@cmda-law.com

**RANDALL A. JUIP (P58538)**
**BRIAN J. RICHTARCIK (P49390)**
FOLEY, BARON, METZGER & JUIP, PLLC
Attorney for Defendants, Correctional
Healthcare Companies, Inc., Health
Professionals, Ltd, P.C., Stephanie L.
Miller, LPN and Wilfred P. Saldanha, M.D.
38777 Six Mile Road, Suite 300
Livonia, MI 48152
(734) 742-1800 / Fax (734) 521-2379
rajuip@fbmjlaw.com
brichtarcik@fbmjlaw.com

i

TABLE OF CONTENTS

Questions Presented…………………………………………..………..…………….....…………iii

Index of Authorities……………………………………………………………………....…..…….iv

Statement of Facts……………………………………………………………………….....…1

Standard of Review…………………………………………………………………….....…3

Argument…………………………………………………………………………....…4

    I.      Defendants' argument regarding the 8th Amendment is
misplaced………………………………………………………………….....…4

    II.     Plaintiff's count against Sheriff Bensley was adequately
pled……………………………………………………………………....…6

    III.    Defendants Lassa and Martin cannot show that
they are entitled to Qualified Immunity at this time
and Plaintiff's claims were adequately pled……………………………..……….8

    IV.    Because Plaintiff's claims were adequately pled
relative to Lassa and Martin, defendants' argument
regarding municipal liability fails……………………………………..………11

    V.     Defendant's argument regarding the statute of limitations is
based on the incorrect authority…………………………………...………..12

    VI.    Defendants arguments regarding immunity in relation
to state law claims are both premature
and without merit…………………………………………………..………13

Conclusion……………………………………………………..………………...………17

## QUESTIONS PRESENTED

I.   Did Plaintiff's adequately plead a deliberate indifference action pursuant to the Eight and Fourteenth Amendments?

II.  Did Plaintiff adequately plead that Sheriff Bensley, as final policymaker, was the driving force behind Danny Whitney's untimely death?

III. Have defendants demonstrated that defendants Lassa and Martin are entitled to qualified immunity with regard to deliberate indifference at this pre-discovery phase of this litigation?

IV.  Is the County entitled to dismissal of the allegation of municipal liability solely based on the argument that the deliberate indifference claims presented against Lassa and Martin are inadequate?

V.   Are Plaintiff's state law claims barred by the applicable statute of limitations?

VI.  Are defendants entitled at this stage to have the state law claims dismissed on the basis of governmental immunity

INDEX OF AUTHORITIES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)…………………………………………………...……..6-8

*Baker v Union Twp.,*
2014 Fed App 0733N (6th Cir 2014)………………………………..…………….12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)…………………………………………………… 6-7

*Burgess v. Fischer,*
735 F.3d 462 (6th Cir. Ohio 2013)……………………………………………..8

*City of Revere v. Mass. Gen. Hosp.,*
463 U.S. 239, (1983)………………………………………………...……..5

*Comm'rs of Bryan Cnty. v. Brown,*
520 U.S. 397 (1997)……………………………………………….………11

*Comstock v. McCrary,*
273 F. 3d 693 (6th Cir. 2001)……………………………………………….9-11

*Conley v. Gibson,*
355 U.S. 41 (1957)…………………………………………..………………6

*Davis v Chatman,*
292 Mich App 603 (2011)………………………………...…………………..15

*Farmer v. Brennan,*
511 U.S. 825 (1994)…………………………………………………….9, 11

*Grindstaff v. Green,*
133 F.3d 416 (6th Cir. 1998)……………………………...………………….4

*Hardy v Maxheimer,*
429 Mich 422 (1987)…………………………………………….……………..13

*Lemarbe v. Wisneski,*
266 F.3d 429 (6th Cir. 2001)……………………………...………………..9, 11

*Marchese v. Lucas,*
758 F.2d 181 (6th Cir. 1985)……………………………………………….7, 12

*Modd v County of Ottawa,*
L10-CV-337, 2010 WL 5860425 (W.D. Mich. Aug. 4, 2010)………………………………5

*Monell v. Department of Social Services*,
436 U.S. 658 (1978)……………………………………………………………………11-12

*Odom v. Wayne County*,
482 Mich. 459 (Mich. 2008)…………………………………………..………………15

*People v McGraw*,
484 Mich 120 (2009)………………………………………………………...……..14

*Phillips v. Roane County*,
534 F.3d 531 (6th Cir. 2008)………………………………………….……………..5, 10, 11

*Vermilya v. Dunham*,
195 Mich. App. 79 (1982)…………………………………………….………………16

*Vickers v. Fairfield Med. Ctr.*,
453 F.3d 757 (6th Cir. 2006)………………………………………...………………4

*Westlake v. Lucas*,
537 F.2d 857 (6th Cir. 1976)……………………………..………………………………9

## STATEMENT OF FACTS

This cause of action arises out of the preventable death of Danny Whitney, which occurred while Danny was incarcerated at Grand Traverse Correctional Facility ("GTCF").  At the outset of this briefing, it should be noted that the discovery process in this case is ongoing.  As a result, the recitation of facts for this Court is, at this time, based on the allegations in Plaintiff's Complaint (attached as Exhibit A), as opposed to record evidence.  As will be argued below, the procedural posture of this case renders much of defendants' motion premature and improper.

At approximately 3:50 p.m., on March 2, 2011, Danny tested positive for narcotics in a test administered by his probation officer, Margaret Drury.  Subsequently, Sergeant Ed Lassa arrived at the probation office in order to take Danny into custody.  At that time, Lassa noted that Danny appeared to be groggy.  Lassa proceeded to question Danny, who asserted that he had recently taken four methadone pills and one Xanax pill.  Lassa and Drury then contacted the home at which Danny resided in order to check his prescription pill bottles.  A discrepancy was reported to Lassa regarding when the prescription was filled and how many pills were in the bottles.  Nonetheless, there was no determination made as to the amount of methadone ingested by Danny.

Lassa took Danny to GTCF.  He decided to conduct a body cavity search in light of the discrepancy regarding Danny's prescriptions and as a result of the fact that Danny was admittedly under the influence of drugs.  Nothing was found during the search.  Danny was then placed on a bench in the booking area where it was again noted that he remained groggy.

At approximately 5:35 p.m., Deputy Scott Martin took Danny's vitals, which were noted as blood pressure of 94/54, oxygen saturation of 83% and pulse of 67.  At approximately 5:38 p.m., a Jail Medical/Mental Questionnaire was completed by Martin which affirmatively stated that Danny was a methadone user and further confirmed that Danny abused drugs and alcohol.  The Jail Medical/Mental Questionnaire also documented Danny's medical history of high blood pressure.

At approximately 5:45 p.m., Martin entered the medical office and stated to Stephanie Miller, LPN ("Miller") that Danny appeared to be under the influence of something and reported Danny's pulse ox as 83%.  At approximately 5:54 p.m., Miller took Danny's vitals and gave him a glass of water.  Miller noted that Danny was drowsy and that his speech was slurred.  Danny's vitals were noted as blood pressure of 90/58, pulse ox of 96% and pulse of 73.

At approximately 6:00 p.m., Danny's blood pressure was noted as 87/60.  Miller then advised Martin to place Danny in a cell in the intake area for observation.  Danny was placed in observation cell 104.  Danny was noted to be snoring very loudly.

After he was placed in the observation cell, no deputy or medical provider ever re-evaluated Danny's vital signs.  At approximately 8:45 p.m., Miller informed Martin that Wilfred Saldanha, M.D., had been consulted regarding Danny's condition and advised to let him continue to sleep.  At approximately 8:54 p.m., Danny was noted to be passed out with his left arm falling over his face.  Soon thereafter, Danny was noted to be twitching and seizing.  Throughout that time despite knowing Danny's history, drug intake, and current signs and symptoms, neither County's correctional officers, nor CHC and/or HPL's medical personnel had Danny examined by an nurse, doctor, or transported him to a hospital.  Defendants were aware that Danny was exhibiting signs and symptoms of methadone overconsumption, including dizziness, fatigue, drowsiness, pinpoint pupils, confusion, cold and clammy and snoring.

For the rest of the day, the County's correctional officers and/or medical providers failed to timely perform their rounds and/or observation of Danny as is required of them by the County's own policies and procedures.  Moreover, even though the purpose of Danny's cell assignment was to allow for close observation, Danny was left with a blanket covering his head the entire time during his incarceration. At no time did any correctional officer and/or medical provider enter into the observation cell and closely observe Danny under the blanket.  As a result, it is clear that

regardless of his assignment to an observation cell, Danny was never truly observed and his medical condition was not properly monitored.

At approximately 11:00 p.m., corrections officers found Danny to be unresponsive with foamy froth from his mouth, vomit in the area, cape cyanosis, and arm discoloration. Danny was pronounced dead. The autopsy report concluded Danny's death was a result of acute methadone toxicity. Further, Danny was no stranger to the employees and staff at the GTCF, having been detained in said facility eleven times through the date of his death. The defendants and staff of GTCF knew Danny was at high risk for methadone overdose, toxicity, and death. Despite that knowledge, at all times during his incarceration at the GTCF, Danny was never provided appropriate medical assistance, never properly observed and monitored and never transferred to a hospital.

As a result of the events described above, Plaintiff filed this cause of action. Count I of the Complaint alleges that all of the defendants to this action are liable for deliberate indifference pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments where they denied Danny medical treatment for serious medical needs. Count II presents a claim of municipal liability premised on the notion that the driving force behind the violation in Count I was the failure to train and supervise as well as inadequate policies, practices, procedures and customs. Count III of the Complaint alleged state law claims against each defendant for gross negligence and intentional, willful and wanton misconduct. Finally, Counts IV and V alleged state law claims for medical malpractice and are not at issue in this motion.

Now, prior to any discovery having occurred in this case, defendants Grand Traverse County, Sheriff Bensley, Sergeant Lassa and Deputy Martin have filed their motion to dismiss, which seeks to dismiss each count of the complaint relative to those defendants. For the reasons stated below, defendants' motion is both premature and without merit and, as a consequence, must

be denied.

## STANDARD OF REVIEW

Defendants' present motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(c). "The manner of review under Rule 12(c) is the same as a review under Rule 12(b)(6); we must 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.' *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. Ohio 2006), quoting *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

## ANALYSIS

### I. Count I of Plaintiff's Complaint is not dependent on the applicability of the Eighth Amendment

Defendants' first argument in support of its motion to dismiss is in relation to Count I of Plaintiff's Complaint, which presents a claim of deliberate indifference. In their motion, defendants' imply that Count I must be dismissed as a whole because a deliberate indifference claim falls under the Eighth Amendment and the Eighth Amendment does not apply to Danny because he was not in custody as a result of a criminal conviction. Instead, Danny was a pretrial detainee.

What defendants' brief fails to recognize is that Count I of Plaintiff's Complaint is not solely premised on the Eighth Amendment. Instead, the Count asserts that defendants denied Danny medical treatment in the face of a serious medical emergency, that the denial was the product of deliberate indifference, and that the defendants are liable pursuant to 42 U.S.C. § 1983, and the Eighth *and Fourteenth* Amendments. As the Sixth Circuit has explained, "The Eighth

4

Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. Tenn. 2008). "[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983). In other words, defendants were prohibited from denying Danny medical care in the face of his serious medical emergency regardless of whether Danny was a pre-trial detainee or an inmate who had already been convicted and sentenced and the same analytical framework applies to either factual scenario.

After citing *Modd v County of Ottawa*, L10-CV-337, 2010 WL 5860425 (W.D. Mich. Aug. 4, 2010), defendants' brief actually acknowledges in a parenthetical that pre-trial detainees can maintain viable deliberate indifference actions. As a matter of protecting the client's interests, Plaintiff's counsel pled a deliberate indifference action in Count I and then listed both the Eighth and Fourteenth Amendments because, prior to any suit being filed and any discovery occurring, it remained possible that Danny's status in the correctional facility was different than counsel perceived. However, even if defendant is right, the proper remedy would not be to dismiss Count I, but would be to simply narrow the allegations in that Count. Plaintiff maintains that this Court should not definitively rule at this moment regarding which Amendment is applicable to this case and allow the matter to be revisited post-discovery. This Court should, however, rule that Plaintiff properly pled a deliberate indifference action in Count I and hold that Count I is not properly the subject of a motion to dismiss.

## II.  Plaintiff adequately pled the claim against Sheriff Bensley

Defendants next argue that Plaintiff's claim against Sheriff Bensley was insufficiently pled, and primarily relies on the Supreme Court's opinions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), which expound upon the level of deference that a trial court must show to the allegations in the Plaintiff's Complaint when deciding whether the Complaint adequately states a claim.  As the Court explained, a Motion to Dismiss for Failure to State a Claim presents a "context-specific" opportunity for a trial court to exercise its "experience and common sense" to weed out "implausible or impossible complaints" from proceeding any further. *Id.*

In attempting to ferret out the impossible and implausible complaints addressed in *Iqbal*, a motion to dismiss for failure to state a claim involves an analysis of whether the Complaint "'fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.

The *Iqbal* Court specifically noted that the facial *plausibility* standard was not as strict as a *probability* standard.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations and footnote omitted).  Further, the Supreme Court explained that "legal

6

conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

At its essence, *Iqbal* requires a trial court to accept a Plaintiff's factual allegations as true and then determine whether those factual allegations support the legal cause of action at issue.  When a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.  *Twombly*, 550 U.S. at n.8 (2007).

As defendant's motion acknowledges, Plaintiff's Complaint does specifically allege that Sheriff Bensley "was the Sheriff of Grand Traverse County Correctional Facility and the policy maker for the Grand Traverse County Correctional Facility and represented the ultimate repository of law enforcement power in the Grand Traverse facility."  (See ¶ 3 of the Complaint.)  The Complaint further alleged that "Bensley had the charge and custody of the Grand Traverse County Correctional Facility and formulated and oversaw policies, practices, regulations, protocols, and customs therein and had the authority for hiring, screening, training, supervising, and disciplining of deputies, corrections officers and medical staff."  (See ¶ 4 of the Complaint.)

After setting forth the general allegations regarding Sheriff Bensley's role within the County, the Complaint makes specific factual allegations regarding this cause of action.  In Count II of the Complaint, Plaintiff alleges that Bensley owed duties to properly supervise, monitor and train its correctional officers and medical staff so as to monitor and supervise the jail's prisoners so that they would detect serious medical conditions and facilitate prompt and immediate medical attention and/or transport to a hospital."  (¶ 55 of the Complaint.)  The Complaint proceeds in ¶¶ 56-57 to allege that Bensley (and other defendants) breached its duties as a result of their deliberate indifference towards prisoners and that subsequently, that deliberate indifference became the driving force behind Danny's death.

7

The Sixth Circuit has firmly established that as the policymaker for a County, a sheriff may be held liable under a theory of deliberate indifference.  See *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985); *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. Ohio 2013).  Indeed, in *Burgess*, the Sixth Circuit recognized that where a deliberate indifference claim is brought against the actual policymaker, the ordinary evidentiary requirements in a municipal liability action are somewhat modified.  Specifically, the Court stated that "Notwithstanding, a plaintiff would not need to establish a pattern of past misconduct where the actor was a policymaker with final policymaking authority."  *Id*. at 479 (6th Cir. Ohio 2013).

Without the benefit of any discovery, Plaintiff's Complaint set forth specific allegations regarding Sheriff Bensley's Constitutional duties, the manners in which those duties were breached and the manner in which the breaches resulted in Danny's death while in the custody of the facility Bensley operated.  Sixth Circuit precedent demonstrates that if Plaintiff's allegations prove to be true, Sheriff Bensley can be held liable in this action regardless of whether he directly interacted with Danny or made a specific decision in relation to this occurrence.  Whether the evidence will support Plaintiff's allegations is now a question to be determined through the discovery process.  Neither *Iqbal* nor *Twobly* require Plaintiff to prove the entirety of this case at this juncture.  Rather, those opinions merely require that Plaintiff apprise defendant of the theory of liability in a manner that is understandable and legally plausible.  This Complaint certainly meets those broad requirements.

### III. Defendants Lassa and Martin cannot show that they are entitled to Qualified Immunity at this stage

Defendants next argue that defendants Lassa and Martin are entitled to qualified immunity with respect to Plaintiff's allegation of deliberate indifference.  Prior to fully analyzing defendants' argument, Plaintiff reminds this Court that the present motion is a pre-discovery motion to dismiss,

8

as opposed to a motion for summary judgment.  As the Court is aware, and as will be reiterated below, the applicability of qualified immunity is a fact-based determination that cannot possibly be decided at such an early stage in this litigation.  Defendant's motion with respect to this issue is premature and cannot be granted.

A deliberate indifference cause of action exists where prison officials fail to provide medical care "in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury."  *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  To prevail on a claim of deliberate indifference, a plaintiff must establish the existence of two components: one objective and one subjective.  Plaintiff will address those components in turn.

The objective component of a deliberate indifference claim requires a showing that there was a sufficiently serious threat to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  In the present case, it is uncontested that Danny was facing a serious medical emergency, as he passed away while within defendants' custody.

To satisfy the subjective component of a deliberate indifference claim, a plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.

Further, correctional officers may "not escape liability if the evidence showed that [she] merely refused to verify underlying facts that [she] strongly suspected to be true, or declined to confirm inferences of risk that [she] strongly suspected to exist."  *Farmer*, 511 U.S. at 843 n.8.  "'[A] prisoner is not required to show that he was *literally ignored* by the staff' to prove an Eighth

9

Amendment violation, only that his serious medical needs were consciously disregarded.'" *Lemarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001) (emphasis added).  Likewise, "[t]he Estate does not need to show that the [defendant] acted with the very purpose of causing harm or with knowledge that harm will result."  *Phillips v. Roane County*, 534 F.3d 531, 541 (6th Cir. 2008) (internal quotation omitted).  Rather, a plaintiff is merely required to show that the defendant recklessly disregarded a risk of serious harm.  *Comstock*, 273 F. 3d at 703.

Defendants contend that the Complaint fails to adequately set forth a claim for deliberate indifference with regard to Lassa and Martin.  Defendants argue that the Complaint merely alleges that Sgt. Lassa properly ascertained that there was a discrepancy in when Danny's prescriptions were filled and how many pills he had left and then conducted a body cavity search and transported Danny to GTCF.  With regard to Martin, defendants contend that the Complaint merely shows that Martin expressed concerns to Stephanie Miller and that Martin was advised to place Danny in an observation cell and to allow him to sleep.

Defendant's argument regarding Lassa and Martin fails to appreciate the significance of the allegations in ¶ 52 of the Complaint, which alleges that each defendant, including Lassa and Martin, breached his or her duties in failing to immediately provide Danny with medical attention (¶ 52-b), failing to transfer Danny to a hospital (¶ 52-c); failing to ensure that Danny was examined and treated on site (¶ 52-d) and failing to do rounds of the observation cell Danny was placed in (¶ 52-g).  In other words, defendants' motion contends that they met their constitutional requirements when they took action that resulted in Danny being placed in an observation cell.  Plaintiff's Complaint, in contrast, alleges that Danny should have never been placed in an observation cell because he necessitated immediate treatment or transfer.  Alternatively, once Danny was wrongly placed in an observation cell, defendants Lassa and Martin had an obligation to conduct rounds to watch Danny.  Instead, Danny was permitted to remain in his cell with a blanket over his head up

until the time of death.  Lassa and Martin failing to adequately observe Danny eliminated any value to the observation cell classification and directly resulted in Danny's death when it was clear that Danny was under the influence of narcotics.

As *Comstock*, *Phillips* and *Lemarbe* demonstrate, Plaintiff does not need to demonstrate *at any point in this case* that Lassa and Martin literally ignored Danny and maliciously caused his death. Instead, Plaintiff must demonstrate that Lassa and Martin did not take adequate action in light of their knowledge of Danny's medical emergency and that their inaction resulted in his death. Pursuant to *Farmer*, Plaintiff can make that showing through direct and circumstantial evidence. The Complaint plainly presents those allegations.  That defendants disagree with the allegations is not a basis to grant a pre-discovery dispositive motion.

### IV. Grand Traverse County's Liability under 42 U.S.C. § 1983

Defendant next argues that the claim of municipal liability against defendant Grand Traverse County fails as a matter of law in this pre-discovery stage of this case.  According to defendants, because Lassa and Martin are entitled to qualified immunity (which, again, is both premature and incorrect), there is no underlying constitutional violation and the claims against the municipality cannot proceed.

As the Supreme Court held in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), 42 U.S.C. § 1983 applies to municipalities and other local governments under certain circumstances. *Id*. at 690.  A plaintiff must identify a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by that local governing body's officers, or a "constitutional deprivation[] visited pursuant to government 'custom' even though such a custom has not received formal approval through the [local governing] body's officers."  *Id*. at 690-91. After a plaintiff identifies a municipal policy, he must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged."  *Comm'rs of Bryan*

*Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  Moreover, a Plaintiff can demonstrate liability under Monell by demonstrating that the municipality ratified the unconstitutional conduct at issue. *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985).

Presumably because there has been no discovery in this case, defendant's motion to dismiss with regard to the municipal liability claim is not premised on an argument that its policies, practices, procedures and customs were not constitutionally deficient.  Instead, defendants solely contend that because Lassa and Martin did not violate Danny's constitutional rights, the County cannot be liable under *Monell*.  Plaintiff first notes that there are instances in which individual employees may not be held liable for a constitutional violations but the municipality is nonetheless liable under *Monell*.  See *Baker v Union Twp*., 2014 Fed App 0733N, slip op 20 (6th Cir 2014) (Attached as Exhibit C).  Additionally, however, Plaintiff primarily notes that because the County's motion is solely premised on the argument that the pleadings were insufficient regarding Lassa and Martin, the County's motion must be denied for the same reasons as Lassa and Martin's.

As Plaintiff argues above, the Complaint adequately alleges that Lassa and Martin, who indisputably interacted with Danny prior to his death, failed to timely ensure that Danny was provided with necessary medical treatment and transfer *and* that they further failed to conduct necessary observation of Danny while he was in his cell.  Accepting those pleadings as true, as must be done for the purposes of a motion to dismiss, Lassa and Martin could be held liable for deliberate indifference if a jury determined that Lassa and Martin knew that Danny required more care than he was provided.  Therefore, because there is an adequately pled underlying constitutional violation, the sole basis of the County's argument is without merit.

### V.  State Law Statute of Limitations

Next, defendants argue that Plaintiff's state law claims against Sheriff Bensley, Sergeant Lassa and Deputy Martin must be dismissed because the applicable statute of limitations has expired.

Specifically, defendants direct this Court to MCL 600.5805(7), for the proposition that pursuant to MCL 600.5852(1), any action against a Sheriff and his deputies is subject to a two-year statute of limitations.

Defendants' argument regarding the statute of limitations fails to recognize that this action is a wrongful death action that implicates MCL 600.5852(1). That controlling provision provides that "If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run." As the Supreme Court long ago explained, this statutory provision applies in both instances where the decedent instantaneously died from the negligence at issue (such as the present case) and in cases where the death was not instantly tied to the alleged negligence. *Hardy v Maxheimer*, 429 Mich 422, 432 (1987). Thus, when determining the date by which Plaintiff had to commence this action, the starting point is not the date of Danny's death, but is instead the date that the letters of authority were issued.

The letters of authority, attached as Exhibit B, were issued on July 31, 2012. As a result, MCL 600.5852(1) mandated that Plaintiff's state law claims be filed by July 31, 2014. As defendants' motion recognizes, Plaintiff's Complaint was filed on June 11, 2014, which was more than a month before the expiration of the statute of limitations. Plaintiff's Complaint was timely filed and defendant's statute of limitations argument is without merit.

### VI. State Law Immunity

Defendant's final issue is with respect to Plaintiff's state law claims against the County, Sheriff Bensley and Lassa and Martin. With regard to the County, Plaintiff acknowledges that the Complaint did not identify an exception to governmental immunity. With that acknowledgment, Plaintiff contends that the County's assertion of governmental immunity should be treated as an

affirmative defense that must be established through the development of the record in this case. With no discovery having yet occurred, it remains possible that it will later become evident that an exception does apply. Further, Plaintiff notes that defendants' argument regarding the state law exception to governmental immunity of course has no impact on Plaintiff's claim of municipal liability pursuant to 42 U.S.C. § 1983. With that said, Plaintiff will proceed to individually address the state law claims presented against Sheriff Bensley and Lassa and Martin.

### a. Sheriff Bensley is not entitled to absolute immunity

Defendants next contend that Plaintiff's state law claims against Sheriff Bensley fail as a matter of law because Sheriff Bensley is entitled to absolute immunity from tort liability pursuant to MCL 691.1407(5). That statute provides that

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Defendants contend that a Sheriff is the highest elected official in his level of government and thus absolutely immune. In making that argument, which it has the burden of establishing, defendant directs this Court to no case in which an action against a Sheriff was dismissed by operation of this immunity statute.

If the legislature intended to make a Sheriff absolutely immune from tort liability in MCL 691.1407(5), it could have explicitly stated so. It did not. The legislature's silence, combined with the lack of supporting case law, indicates that Sheriffs are not entitled to absolute immunity. Moreover, as plaintiff addressed in Issue V of this brief, defendants have contended that the state law action is barred by the statute of limitations by way of MCL 600.5805(7). Again, that statute explicitly applies to actions brought against a Sheriff, such as Sheriff Bensley. As the Michigan Supreme Court has stated, "[i]n interpreting a statute, we [must] avoid a construction that would

14

render part of the statute surplusage or nugatory." *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009).  If the legislature in one statute rendered Sheriffs absolutely immune, it would be wholly unnecessary to then draft a second statute to govern the statute of limitations in actions against those absolutely immune actors.

Similarly, where two statutes seemingly conflict, the more specific statute controls.  *Davis v Chatman*, 292 Mich App 603, 625 n 12 (2011).  While MCL 600.5805(7) specifically references the ability to maintain a cause of action against a Sheriff, MCL 691.1407(5) makes no mention of that type of official.

Because defendants have offered this Court no support for the proposition that a Sheriff is entitled to absolute immunity, and because an examination of the relevant statutory authority plainly contradicts that position, Plaintiff respectfully requests that this Honorable Court deny defendant's motion with respect to the state law claims against Sheriff Bensley.

> **b. Plaintiff's complaint adequately alleges claims against Lassa and Martin under state law and defendants' motion asks this Court to prematurely make a determination regarding immunity**

Finally, defendants contend that Plaintiff's state law claims, if timely, nonetheless must be dismissed because defendants are entitled to immunity under state law.  In order to shield themselves with an immunity defense, *defendants* must "establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature." *Odom v. Wayne County*, 482 Mich. 459, 461 (Mich. 2008).

While Plaintiff acknowledges that Lassa and Martin were engaged in a government function during these events, Plaintiff's dispute that defendants are entitled to dismissal.  As defendants state in their brief, defendants Lassa and Martin may be held liable under state law if it is

15

demonstrated that they were grossly negligent.  Gross negligence has been defined by statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a).  There is no dispute that Plaintiff's Complaint *alleged* that Lassa and Martin were grossly negligent.  Defendants acknowledge that on its face, Plaintiff's Complaint makes the necessary legal allegations.  Defendants then argue that the question of gross negligence can, at times, be decided as a matter of law and invite this Court to decide that issue in this case.

Defendants direct this Court to *Vermilya v. Dunham*, 195 Mich. App. 79; 489 N.W.2d 496 (1982) as an example of when a Court has decided gross negligence as a matter of law.  However, defendants fail to point out that it is evident that the Court in *Vermilya* decided that question *after* discovery was complete, which is evident in the following passage:

> After reviewing the record, we agree with the trial court that the undisputed facts in this case preclude a finding that defendant's conduct amounted to gross negligence. Defendant became aware that the goals could be tipped over approximately one to two weeks before plaintiff's son was injured. He then asked his maintenance supervisor to determine how the goals could be anchored, checked with the maintenance supervisor on his progress, made announcements in school instructing the children to stay off the goals, and disciplined students for climbing the goals. The trial court properly granted defendant's motion for summary disposition.

Defendants' reliance on *Vermilya* reflects a pervasive problem in defendants' motion: the repeated request that this Court engage not just in factual finding, but in *pre-discovery* factual finding. Plaintiff has plainly set forth that Lassa and Martin were grossly negligent when they knowingly disregarded a risk of substantial harm caused by Danny's medical emergency.  They demonstrated that disregard by failing to ensure that Danny was transferred for prompt medical care and by failing to monitor Danny while he was in an observation cell.  Their gross negligence caused Danny's death.  Defendants are certainly free to deny those allegations at this stage.  However, that denial should be left for defendants' Answer, as opposed to a dispositive motion.  The mere fact that defendants contest Plaintiff's allegations is not a sufficient basis for declaring that an action

16

fails as a matter of law.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Honorable Court deny defendants' Motion to Dismiss in full, as it is both premature and without merit.

Respectfully Submitted,

By:    /s/ Ven R. Johnson_____
JULIANA B. SABATINI (P64367)
VEN R. JOHNSON (P39219)
Attorneys for Plaintiff
Buhl Building
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 324-8300

Dated: October 13, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2014 this document was filed electronically.  Notice of this filing will be sent to the filing parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Shannon E. Ogden
SHANNON E. OGDEN

17